HARRY B. HINE *v.* JOHN N. POMEROY AND OTHERS.

*Scire Facias.   Evidence.   Impeachment.   Statute.   Sheriff.*

Where the question before a jury in a *scire facias* action was whether C., the plaintiff's attorney in the former suit, *Hine* v. *Nichols*, directed T., the officer, to whom he gave the writ for service, to take the receipt of M., and not remove the property, and the officer had testified that the attorney did give such direction, and the attorney had testified that he did not, and it was proposed to have him further testify "that his uniform habit and course of business as an attorney, before and at the time of issuing said writ, in the case of delivering writs of attachment to officers for service, was *not* to give instructions to such officers to take receiptors, or as to whom they should take as receiptors, but to abstain from giving such instructions in respect thereto," it was *held* that he should have been permitted to have testified as proposed.

C. had testified that he did not give such directions to T. as the defendants claimed and gave evidence to prove. Nichols for the defendants testified that a short time after the service of the plaintiff's said writ, C. told him that the plaintiff had told him, C., to direct T. to take M. as receiptor. The court permitted this testimony to be considered by the jury as tending to impeach C. *Held,* that in this there was error.

The court properly excluded the plaintiff from proving that the plaintiff never directed C. to direct or authorize T. to take M. as receiptor.

The execution in favor of Hine against Nichols containing an indorsement thereon in the handwriting of C. was properly excluded as evidence, the parties being agreed as to the amount the plaintiff was entitled to recover, if entitled to recover at all.

Section 73, chapter 30, General Statutes, providing that in case of the removal of sheriff or high bailiff from the state, etc., that the action of *scire facias* may be brought directly upon the recognizance of such officer and his sureties, *held,* to embrace all causes of action whether existing at the time it took effect or accruing thereafter, and so continued until the enactment of 1865, by which its operation was limited to causes of action arising subsequently to the second day of November, 1860. That act was virtually a repeal of said section 73, as to causes of action that accrued prior to the time named in it.

Section 19, chapter 4, General Statutes, providing as to the effect of a repeal of a law on actions then pending, was not designed to be limited to cases of formal repeal in literal terms, but to save suits depending on statutory provisions, where, on the bringing of the suits, the provisions on which they depended had ceased to be operative by reason of other enactments; therefore where a cause of action had accrued upon an officer's recognizance under the provisions of section 73, chapter 30, General Statutes, prior to November 2d, 1860, but the action was pending at the time of said enactment of 1865, it was *held* to be one of the class of suits embraced by said section 19.

THIS was an action of *scire facias* against the defendants on the bail of Savedra W. Taylor, former sheriff of Chittenden County, and was tried by the jury on the issue joined upon the replication to the defendants first and second pleas, September Term, 1866, PIERPOINT, Ch. J., presiding. The only controverted question submitted to the jury was, whether L. E. Chittenden, the attorney of the plaintiff in the suit *Hine* v. *Nichols* in said pleas referred to, did at the time of delivering to Taylor for service the writ in that cause, direct Taylor to take the receipt of Nichols and Daniel Macomber for the property which should be attached upon that writ.

The declaration set forth and the evidence tended to show that on the 3d day of February, 1851, a writ of attachment in favor of

Harry B. Hine against James Nichols, was put into the hands of said Taylor, then sheriff of Chittenden county, for service ; that service was duly made by attaching certain goods and chattels of the defendant, and the writ entered in court, and judgment recovered thereon in favor of the plaintiff for $1302.84, damages and costs, at the December Term of the supreme court, 1854 ; that execution was duly issued thereon in January, 1855, and returned unsatisfied ; that said Taylor neglected on demand to deliver the property attached on said writ to satisfy said execution, and suffered the same to go into the hands of Nichols and to be wasted, and that Taylor within one year from and after said return of said execution, to-wit : On the 1st day of May, 1855, removed from the state to Michigan, and left no known attachable property in the state, and has not since returned to this state, nor had known or attachable property therein, for which cause service of process ever since such removal could not be made upon him.

The defendants filed two pleas setting forth that said writ was delivered to Taylor for service by Lucius E. Chittenden, the lawful attorney and authorized agent for that purpose, of the plaintiff; that Chittenden, as such attorney and agent, expressly directed and instructed Taylor to deliver the property which he should attach on said writ of attachment to Nichols and one Daniel Macomber, for safe keeping, as bailees, and to take their receipt, commonly called an officer's receipt, therefor ; and that Taylor, in conformity with said directions and instructions, did attach and take, by virtue of said writ, the goods and chattels in the declaration mentioned, and did deliver the same to Nichols and Macomber as bailees, for safe keeping, and did take and receive from them an officer's receipt, so called, in writing, signed by Nichols and Macomber, therefor, in and by which receipt Nichols and Macomber acknowledged the reception by them of the said goods and chattels, valued at $1500., and jointly and severally promised to return the same to Taylor, or to any other legal officer holding said receipt on demand ; that neither the said goods and chattels, nor any part of them have ever been returned to Taylor, but, without the knowledge or consent of Taylor, were sold or otherwise disposed of by Nichols and Macomber, and the pro-

ceeds converted by them to their own use; that during the life of said execution Taylor duly demanded said goods and chattels of Nichols and Macomber, but they wholly neglected and refused to return the same or any part thereof, to Taylor, or to pay the value thereof; that afterwards, to wit, on the 6th day of March, A. D. 1855, Taylor, at the request of Chittenden, delivered the said receipt to Chittenden, and then and there gave permission to him to prosecute a suit against Nichols and Macomber in the name of Taylor, for the recovery of the value of the said goods and chattels; and a suit was thereupon commenced by Chittenden, as the attorney of the plaintiff in favor of Taylor, against Nichols and Macomber, and was prosecuted to final judgment at the December Term, 1856, of the supreme court for the county of Chittenden; and so the defendants say, that Taylor, as sheriff of Chittenden county, was guilty of no default or negligence, etc.

The plaintiff offered in evidence the execution in favor of Hine against Nichols, named in the declaration. To this the defendants conceding that if the plaintiff was entitled to recover at all, he was entitled to recover the full amount of the execution against Nichols, as stated in the declaration, with interest from date to trial, objected, and the court excluded the same. The plaintiff excepted. The defendants then offered and read the deposition of Taylor, in which he testified directly and unequivocally that Chittenden did give such directions, as set forth in the plea, and that he took the receipt in pursuance thereof, and rested the case on their part.

The plaintiff then put in the testimony of L. E. Chittenden, referred to in the deposition of Taylor, and his own testimony, as witness. The testimony of Chittenden tended to show, among other things, that at the time of the issuing of said writ of *Hine* v. *Nichols*, he was, and for years before and after had been, and then was, an attorney at law, in practice at Burlington, doing a large business; that he made out said writ and handed it to Hine, and not to Taylor; and that he did not then, or at any time, instruct or authorize Taylor to take Nichols and Macomber as receiptors, and that he then knew that the effect of such instructions would be to release Taylor, as sheriff, from official responsibility.

The plaintiff offered to show further by Chittenden, that his uniform habit and course of business as such attorney, before and at the time of issuing said writ, in the case of delivering writs of attachment to officers for service, was *not* to give instructions to such officers to take receiptors, or as to whom they should take as receiptors, but to abstain from giving instructions in respect thereto; and proposed to ask the witness what was his habit and course of business as attorney in that respect. To this offer and question the defendants objected, and the court excluded the same. To this the plaintiff excepted.

The plaintiff's testimony, as a witness in his own behalf, tended to prove that he received said writ from Chittenden at his office and took it to Taylor in the street, and there delivered it to him, giving him instructions to make service of the writ and to secure the debt by attachment; but did not then or at any time direct Taylor as to receiptors, and that nothing was said upon that subject.

The plaintiff again offered in evidence said execution, with the return thereon, and a certain direction thereon endorsed, as follows: " H. Paul, sheriff, is hereby directed to demand of S. W. Taylor, late sheriff, the property attached on the writ in the suit in which this Ex. issued in time, so that Taylor may have time to demand it of the receiptors, if there are any, within the time required by law, to legally charge said property in execution."

" PHELPS & CHITTENDEN, *Plff's Att'ys.*"
which was proved to be in the handwriting of Chittenden, and to have been made some four years after the service of the writ *Hine* v. *Nichols,* as appears by the paper, and proposed to exhibit the same to Chittenden, and to enquire of him whether at the time of making the same he knew who were the receiptors of the property attached on said writ. The court, upon the defendants' objection, excluded the paper offered. To this the plaintiff excepted. The plaintiff rested, not having given any testimony contradicting Taylor as to what took place upon his serving the writ.

Nichols testified in substance, that a short time after the service of said writ he called at the office of Chittenden, and Chittenden, in conversation in respect to said suit, then said that Hine did not seem

disposed to make him (Nichols) trouble, as he, (Hine) had directed him (Chittenden) to direct Taylor to take Macomber as receiptor. The plaintiff then re-called Chittenden, who testified that he never had any such conversation with Nichols as Nichols had testified to.

The plaintiff then offered to prove by Chittenden, and by his own testimony, that the plaintiff never did direct Chittenden to direct or authorize Taylor to take Macomber as receiptor. To this offer the defendants objected, and the court excluded the testimony offered. To this the plaintiff excepted.

The testimony being closed, the defendants claimed the right to open and close the argument to the jury. The court, against the plaintiff's objection, ruled that the defendants had the right claimed, and the case was thus argued. To this ruling the plaintiff excepted.

The plaintiff claimed that this last testimony of Nichols, as to his conversation with Chittenden, had no bearing upon the case, either to prove the instructions claimed or as an impeachment of Chittenden. The court ruled and so charged the jury, that this evidence had no bearing upon the case except to impeach Chittenden; but that so far as the testimony of Nichols on this point tended to show that Chittenden admitted that he gave the instructions claimed, to Taylor, it did tend to impeach Chittenden. To this the plaintiff excepted. The charge of the court was in all other respects satisfactory, and not excepted to.

The jury rendered a verdict for the defendants upon the issues of fact joined, and the court judgment thereon.

*Daniel Roberts* and *Jeremiah French,* for the plaintiff, maintained that the plaintiff's offer of Chittenden's uniform habit and course of business should have been received, and cited, 1 Stark Ev. 35 ; *Den* v. *Dowman,* 1 Green's R., 135 ; ( 2 Cow. and Hills' notes, 1235, 424 ; ) see case of attesting witnesses, 2 Cow. and Hills' notes, 1303–4 ; *Mech. Bank* v. *Spicer,* 6 Wend. 443 ; *Barker* v. *N. Y. C. R. R.,* 24 N. Y. R. 599 ; *Holley* v. *Gas Co.,* 8 Gray, 123 ; *Thallhimer* v. *Brinkerhoof,* 6 Cow. 90 ; *Miller* v. *Hackley,* 5 Johns. 375 ; *Toosey* v. *Williams,* 1 Mood. & Malk. 129.

The request founded on the testimony of Nichols should have been granted.  *Barnard* v. *Henry*, 25 Vt. 289.

The court erred in excluding the execution with the endorsements thereon.  *Lapham* v. *Kelley*, 35 Vt. 195, 201.

This action was brought under the provisions of chap. 30, § 73, of Gen. Stat., and is embraced in its terms.  1 Kent's Com., 455, and notes ; *Van Rensselaer* v. *Hays*, 19 N. Y. 78 ; *ib.* 100 ; *Brown* v. *Storm*, 4 Vt. 37 ; *Pratt* v. *Jones*, 25 Vt. 303 ; *Bell* v. *Roberts*, 13 Vt. 582 ; *Hepburn* v. *Curts*, 7 Watts, 300 ; *Hill* v. *Sunderland*, 3 Vt. 514 ; *Richardson* v. *Cook*, 37 Vt. 605 ; *Hewitt* v. *Wilcox*, 1 Met. 154 ; *Wright* v. *Oakley*, 5 Met. 408.

The plaintiff having brought his suit, and incurred expense under this act, it may be doubted whether he had not thereby acquired such a vested interest as the legislature could not take away without providing a substitute.  *Dash* v. *Van Kleek*, 7 Johns, 494, 6, 7, 8 ; see *Johnson's adm.* v. *Dexter*, 37 Vt., p. 646 ; 1 Kent's Com. 456, note c, 11th Ed. ; *Alexander* v. *State*, 9 Ind. 337 ; (18 U. S. Dig. 683 pl. 58.)

*A repeal* of section 73, without any saving clause, would not have affected this action.  This is a fundamental provision of Vermont legislation.  Ch. 4, § 19, G. S. ; *Pratt* v. *Jones*, 25 Vt. 303.

*Hard & Shaw*, for the defendants, insisted, in addition to other points raised, that the act of 1865, amending section 73, ch. 30, G. S., is retrospective in its operation, and that it applies to actions, which were pending at the time of its passage.  *People* v. *Livingston*, 6 Wend. 530 ; *Read* v. *Frankfort Bank*, 23 Me. 318.

The validity of the act of Nov. 1865 is sustained by the following authorities, also, Sedg. on Stat. and Const. Law, 129–30, 193 ; 2 Story on Const. § 1398 ; *Hine* v. *Belden*, 27 Conn. 384 ; *Oriental Bank* v. *Freeze*, 18 Me. 109 ; *U. S. Bank* v. *Longworth*, 1 McLean, 35 ; *Evans* v. *Montgomery*, 4 Watts & Serg. 218 ; *Coffin* v. *Rich*, 45 Me. 507.

But even if it should be considered that the present case is not affected by the amendment of November, 1865, still the plaintiff is not entitled to recover.

14

It will not be denied that (laying out of consideration, the act of 1865) the plaintiff's right to recover in this case, depends wholly upon the construction and validity of section 73, above mentioned. In respect to that section we insist : *First*—That although the language used may be sufficiently broad and general to include past transactions ; still that the intention of the legislature to make the act retrospective in its operation, is not sufficiently clear to justify such a construction.

Statutes are always to be construed as intended to operate prospectively, unless the intention of the legislature to make them retrospective " is so clear and positive as by no possibility to admit of any other construction." Sedg. Stat. & Const. Law, 193 ; Smith's Comm. 679 ; *Briggs* v. *Hubbard*, 19 Vt. 86 ; *Cook* v. *Richardson*, 37 Vt. 599, and cases there cited ; *Wright* v. *Oakley*, 5 Met. 400 ; *King* v. *Tirrell*, 2 Gray, 331 ; *Garfield* v. *Bemis*, 2 Allen, 445 ; *Murray* v. *Gibson*, 15 Howard, 421 ; G. S. ch. 130, p. 766, § 3.

*Second*—That if it was the intention of the legislature that the section under consideration should receive a retrospective construction, the act, so far as concerns the present case, violates the provision of the United States constitution which inhibits the states from passing laws impairing the obligation of contracts.

All laws in force at the time and place of the making of the contract, controlling or affecting the rights, duties and obligations under the contract, of the parties to it, are presumed to be in the minds of the parties when the contract is made, and constitute a part of it. *Blanchard* v. *Russell*, 13 Mass. 16 ; 2 Story on Const. §§ 1378, 1380 ; Smith's Comm., 391–2–5, 406 ; *Bronson* v. *Kinzie*, 1 Howard, 319, 321.

The opinion of the court was delivered by

BARRETT, J. The question before the jury was whether, when the writ of the *plaintiff* v. *Nichols* was delivered to sheriff Taylor to be served, Chittenden, the plaintiff's attorney, directed Taylor to take the receipt named in the exceptions, and not remove the property.

I. On that question the defendants took the burden and the affirmative, and went forward. They gave in evidence Taylor's

deposition, in which he testified directly and unequivocally that Chittenden did give such direction, and that he took the receipt in pursuance of it.   Chittenden was then introduced as a witness by the plaintiff, and testified that he did not give such direction. It was proposed to have him further testify "that his uniform habit and course of business as an attorney, before and at the time of issuing said writ, in the case of delivering notes of attachment to officers for service was, *not* to give instruction to such officers to take receiptors, or as to whom they should take as receiptors, but to abstain from giving such instructions in respect thereto." He had already testified that at that time "he was, and for years before and after, had been and was an attorney at law, in practice in Burlington, doing a large business." It is conceded in the argument that it would have been proper, or not objectionable, for Chittenden to have added to his denial that he gave such direction, as a kind of supplement, by way of indicating the confidence with which he made such denial, what it was proposed as a distinct offer, to have him testify. To the same end and intent it seems to the court that he should have been permitted to testify as proposed.   There was a conflict between himself and Taylor ; he testifying that *he did not* against Taylor testifying that *he did.*   In such cases it is commonly claimed that the testimony of him who testifies affirmatively that an act was done, or an event happened, (other things being equal,) is less like to be erroneous, and is more reliable than the testimony of him who testifies that such act was not done or such an event did not happen.   Ordinarily it is said, and justly, that he who testifies to the negative may have forgotten a fact that actually took place, while he who testifies affirmatively cannot remember a fact that never did take place ; and so, upon common principles affecting or governing the credit and weight to be given to testimony thus in conflict, it should rather be held that the one had forgotten than that the other had testified falsely.   It seems proper, as grounded in sound principle, and sanctioned by long usage, that such affirmative facts and circumstances as are connected with, or kindred to, the fact in controversy, and so related to it as to affect the conduct or the memory of the witness as to the main fact, may be testified to by him, as bearing upon the likelihood of his not hav-

ing forgotten, nor testified mistakenly as to the main fact. It is conceded, and many books are cited which show, that evidence of the character offered in this case only as corroborative, has been received as pertinent and adequate of itself to prove a material fact,— as in the case of subscribing witnesses who have forgotten about having witnessed the execution of a paper in question,—as in the case of notices of presentment, protest and the like, when the witness has no recollection of the fact, but testifies *to his uniform habit and course of business* in that respect, and to his belief grounded upon it, and thus proves the material fact about which he has no active memory. If such testimony is proper and adequate to prove a material fact, it would seem strange if it should be held not proper as corroborative of the correctness of the witness who swears by his memory as to the main and material fact.

II. Chittenden had testified that he did not give such direction to Taylor as the defendants claimed and gave evidence to prove that he did. Nichols, for the defendants, testified that, a short time after the service of the plaintiff's writ, Chittenden told him that the plaintiff had told him (Chittenden,) to direct Taylor to take Macomber as receiptor. The plaintiff claimed that that testimony of Nichols had no bearing upon the case, either to prove the direction claimed to have been given by Chittenden, or as tending to impeach him. The court permitted it to be considered by the jury as tending to impeach him. In this we think there was error. Impeachment by contradiction requires that there should be a contradiction. To say nothing of the somewhat irregular manner in which this testimony was put into the case, we think, if Chittenden had been asked by counsel for the defendants if he did not tell Nichols that he directed Taylor to take Macomber as receiptor upon an occasion named, and he had denied doing so, it would not have been competent, for the purpose of impeaching him by contradiction, to show that he said what Nichols testified he did say; and if the distinct offer to prove it by Nichols had been made, it would have been the duty of the court to exclude it, and for the very obvious reason that, while Chittenden would have been asked and testified that he did not do or say one thing, the offer would have been to prove that he did

say another and a different thing. This would not be contradiction that works impeachment; and it was only in this view that the evidence given by Nichols was put to the jury. We think the jury should have been instructed as requested on this subject. On these points, for the reasons thus given, the judgment is to be reversed. The other points made upon the exceptions in the argument we regard as properly ruled, so far as they remain material under the decision now made upon the two points above discussed.

III. The question mainly debated and presented to the court for decision does not seem to be raised by any point taken upon the trial in the county court, and still it is one that seems to be material and fundamental, and that it is, whether, upon the facts set forth, if proved, the plaintiff would be entitled to recover. In the present posture of the case, and as the question has been fully argued, we volunteer a decision of this point.

Under the statute in force at the time Taylor became sheriff, and so forward till the General Statutes took effect in August, 1863, this process of *scire facias* upon the recognizance of the sheriff and his bail could not be maintained for the official defaults of the sheriff, unless the party seeking remedy against the bail, had first pursued the sheriff to final judgment for such default. The act of 1860, enabling suit to be brought against the bail without such judgment having been first obtained against the sheriff, was, by a proviso, restrained from applying " to any cause of action already accrued, or any misconduct, neglect or default of any sheriff, or high bailiff then existing." In the General Statutes, chapter 30, section 73, the act of 1860, was incorporated, except that said *proviso* was omitted. So that, by the terms of said section 73, in the cases therein named, suits might be brought against the bail without regard to the time when the cause of action accrued, or the misconduct, neglect, or default of the sheriff happened.

It is claimed for the defendants that the statute, (Comp. Stat. ch. 28, § 56,) which was in force during the official life and services of said Taylor, requiring judgment to be recovered against the sheriff before resort could be had to his bail, was not in such a sense merely providing a remedy, as to fall within the constitutional right of the

legislature to alter and thereby dispense with any of the require-
ments of that statute, as to the steps therein provided, in order to
enable suit to be brought against the bail of the sheriff; in other
words, that it stood in such a relation to the subject, that its provis-
ions should be regarded as affecting the contract of recognizance, and
so cannot be altered in such way as to impair the immunity thereby
accorded to the sureties of the sheriff. In the judgment of the court
that section of the statute appertained only to the remedy, and not
to the contract. Compiled Statutes, chapter 13, section 2, prescribed
the contract, and the purpose and ground of the liability to be incur-
red thereby. The condition of the recognizance prescribes in what
event liability shall be avoided, and clear provisions and principles
of existing law furnish the rule for measuring its extent when
liability is incurred under it. The condition is, that the sheriff
" shall well and faithfully discharge all the duties of his office as
such sheriff." There is no other condition expressed or implied in
the contract, or in the statute requiring such recognizance to be given.
In order to give the contract the character and effect claimed, the
condition must be construed to be, " that the sheriff should well and
faithfully discharge the duties of his office in all cases in which judg-
ment shall be recovered against him for not doing so."

In the next place, the statute, ( Comp. Stat.) chapter 28, from
section 50 to 59, inclusive, professes only to provide for "*proceedings
in actions on penal bonds.*" " Proceedings in actions" imply, by the
terms, mere *remedy* for enforcing an already perfected liability. In
view of the provisions and purposes of the statute requiring the
recognizance to be given, and providing for the proceedings in
actions thereon, instead of holding that the defendants were entitled
to regard their contract as incorporating into itself the provisions of
section 56 of chapter 28, Compiled Statutes, we feel compelled to
hold that they were bound to regard said section as applying only to
matter of *remedy*, and their contract subject to said remedy, as the
legislature from time to time might provide, in case it should not
undertake to extend their liability beyond defaults of the sheriff by
not well and faithfully executing the duties of his office.

It is conceded, as it may well be, in view of the law as adjudged in

this state, that a statute providing, or merely affecting the remedy, may apply to, and operate upon, causes of action that had accrued and were existing at the time of the enactment of such statute, as well as causes of action thereafter to accrue. Whether it should be held to apply to both, or only to the latter, is to be determined by the court, having regard to the terms and provisions thereof, and to its history, purposes and reasons. The legislature finds its legitimate sphere in the enactment of laws. When enacted, it is the province of the courts to administer them by interpreting and declaring their meaning and force, and by applying and giving them effect in cases as they arise.

Section 73, chapter 30 of the General Statutes is not by its provisions limited in its operation with reference to the time when the causes of action, to which it might be applicable, accrued. Hence, standing upon its terms, there is nothing to exclude from its operation causes of action that had accrued and were existing at the time it became operative. Ordinarily statutes are held to operate prospectively and not retrospectively, unless it appears that they were designed to have the latter operation. When it is sought to have such operation given to a statute to the impairment of an existing right, or the infliction of a wrong, established and familiar principles would require the courts effectually to interpose and prevent such results.

When, without such consequences, the intention is apparent that the law should have such operation, such intention would prevail. Again, if such intention was not manifested by the form and language of the enactment, still if the just results would constitute a reason for giving it such operation, and it was not restrained in this respect by some provision of it, such reason would be permitted to operate, and the act to have such effect.

There being in the present case nothing in the language, or provisions of section 73, indicating an intention to restrain it from operating upon all existing causes of action, does reason exist for permitting it to act retrospectively in this case? Holding, as we do, that it has sole reference to the *remedy*, its purpose is manifest to enlarge the remedy theretofore existing, without impairing any right or

incurring any liability springing from the contract itself.  We think, too, such enlargement of remedy was judicious, and was only enabling parties, for whose immunity the recognizance was required, more adequately and justly to avail themselves of the obligation assumed by the recognizance and its condition.

In the next place, the intention of the legislature that enacted the law to have it operate on all existing or future causes of action, is indicated by the fact that while it re-enacts the affirmative part of the Act of 1860, it omits the restrictive *proviso* ; and still more, it contains a provision that was not in the act of 1860, by which sureties in such bonds may be able to defend themselves against any unfounded or illegal claim asserted under and by virtue of said recognizance.

We think, therefore, that in accordance with the spirit and language of the judgments and text books that have been brought to notice in the argument, and in contravention of none of them, it should be held that said section 73 embraced and was operative upon all causes of action, whether existing at the time it took effect or accruing thereafter, and that it so continued until the enactment of 1865, by which its operation was limited to causes of action arising subsequently to the second day of November, 1860.  That act was virtually a repeal of said section 73 as to causes of action that accrued prior to the time named in it.  It left such causes of action, including this suit, standing precisely the same as if said section had been entirely repealed, and the law had been reinstated as it stood in the Compiled Statutes, at the time the recognizance in question was entered into.  It is therefore claimed that this suit, which was brought after the General Statutes went into operation, and before said act of 1865 was passed, must fail.

Section 19, chapter 4, of the General Statutes, which is in substance, the act of 1851, was designed to reach and save suits from being sacrificed by a change of the law in operation at the time, and in pursuance, and by the force of which they had been brought, and were pending when such change should be made.  Though the expression in that section is, " the repeal of such statute hereafter shall not operate to defeat such action," it seems very plain that it

was not designed to be limited to cases of formal repeal in literal terms, but that it was designed to be efficacious to save suits depending on statutory provisions, where, after the bringing of the suits, the provisions on which they depended had ceased to be operative by reason of other enactments..

Upon this construction and application of said section 19, of chapter 4, of the General Statutes, the case of *Pratt* v. *Jones*, 25 Vt. 303, gives full warrant for holding that the present case so depends upon the provisions of statute as to constitute one of the class of suits embraced by that section. This being so, it is needless to pursue the discussion in reference to any of the other views presented in the argument.

For the purposes designed by bringing into discussion the plaintiff's right to maintain this suit upon the facts stated in the declaration, and which his evidence tended to prove, we cannot assume to decide as matter of law, that the plaintiff was, or should be, precluded from maintaining it, by the fact that Taylor did not leave the state till some four months after he had made default for which the plaintiff claims to recover.

The judgment is reversed and the case remanded to the county court.