# J. D. CUSHMAN

## v.

# FRANKLIN D. HALE, AUDITOR OF ACCOUNTS.

OCTOBER TERM, 1895.

*Intoxicating liquor. Interest of prosecutor in fines imposed before but paid after December 1, 1894. Vested right. Repeal of statute giving right.*

No. 41, Acts 1886, gave complainants or prosecuting officers in liquor cases one-fourth of the fines actually paid. This provision was repealed by statute taking effect December 1, 1894. *Held*, that the prosecutor was not entitled to this moiety of a fine imposed by a justice before December 1, 1894, but actually paid after that date, where the reason for the non-payment was an appeal from the judgment of the justice to a term of county court which did not terminate until after December 1, 1894. The statute gave the prosecutor a right in fines collected, and until then he had :

1.  No vested right in them ;

2.  Nor a *quasi* contract with the state as to them ;

3.  Nor an accruing right in them which would be saved to him by V. S., s. 29.

Petition for mandamus. Heard at the October term, 1895.

*J. E. Cushman* and *R. E. Brown* for the petitioner.

A statute is presumed to act prospectively only, unless it clearly appears that the legislature intended it to have a ret-

rospective effect.   Sedg. Stat. and Const. Law 193;  End-
lich on Stat. s. 273;  *Briggs* v. *Hubbard*, 19 Vt. 86, 90;
*Strafford* v. *Sharon*, 61 Vt. 130;  *Starksboro* v. *Hines-
burgh*, 13 Vt. 222;  *Cook* v. *Richardson*, 37 Vt. 599, 604;
*Thorne et. als.* v. *San Francisco*, 4 Cal. 127;  *Quack-
enbush* v. *Dans*, 1 Denio, 130;  *Bronson* v. *Kinzie*, 1
How. 319–321;  *Pac. Mail Steamship Co.* v. *Joliffe*, 2
Wall. 450.

The statute repealed created a contract which the state
could not impair.   1 Kent Com. 414;  *Fletcher* v. *Peck*, 6
Cranch 87, 135;  *Green* v. *Biddle*, 8 Wheat. 1;  1 V. S., s.
506;  *Pac. Mail Steamship Co.* v. *Joliffe, supra*;  *Fletcher*
v. *Peck, supra*;  *Westervelt* v. *Gregg*, 12 N. Y. 202;  *Peo-
ple* v. *State Auditor*, 9 Mich. 327;  *Beadleton* v. *Sprague*,
6 John. 101;  *Lewis* v. *Breckenbridge*, 1 Blachf. 220;
*Couch* v. *Jeffries*, 4 Burr. 1460;  *U. S.* v. *Morris*, 10
Wheat. 246, 292.

*Bates & May* for the petitionee.

The petitioner had no vested right to the fines in question.
*Sumner* v. *Cummings*, 23 Vt. 427;  *Coles* v. *Madison Co.*,
12 Am. Dec. 16;  *State* v. *B. & O. Rd.*, 38 Am. Dec. 318;
Cooley, Const. Lim. 302;  *Butler* v. *Penna.*, 10 How.
302;  *Gregory* v. *Band*, 3 Col. 332;  Endlich, Stat. s.
480;  *Butler* v. *Palm*, 1 Hill 324;  *Ellis* v. *Whittier*, 37
Me. 548;  *Saco* v. *Gurney*, 34 Me. 14;  Distilled Spirits, 1
Ben. U. S. C. C. 367;  *U. S.* v. *Morris*, 10 Wheat. 288;
*Norris* v. Crocker, 13 How. 429.

ROSS, C. J.   This is a petition to have the writ of
mandamus issue, commanding the State Auditor to draw
an order in favor of the petitioner on the State Treasurer for
one-fourth of certain fines paid into the treasury of the state
after December 1, 1894.   The petitioner claims right to a
fourth part of these fines, by virtue of 41 of the Acts of 1886

amended by 41 of the Acts of 1888. The amendment only made the provision of 41 of the Acts of 1886 applicable to one other section of the Revised Laws. Act 41 of the laws of 1886 provides:

"One-fourth of the fines and forfeitures mentioned in sections (naming the sections) shall go to the complainant, when complaint is made, otherwise to the prosecuting officer, and for each conviction of a subsequent offence in violation of sections (naming them), the officer prosecuting said cause to final judgment shall receive the sum of fifty dollars, and the State Auditor is hereby directed to draw his order upon the State Treasurer in favor of the prosecuting officer for said sum after the final determination of such prosecution and sentence of such offender."

This act was repealed in 1894, the repeal to take effect December 1 of that year. In two of the prosecutions, named in the petition, the petitioner was complainant, and in all prosecuting officer, being State's Attorney at the time. The prosecutions were all commenced and convictions were obtained in the lower court before December 1, 1894, and the respondents were duly sentenced, but each appealed therefrom to the county court. The appeal did not vacate the conviction and sentence, unless it was entered in the county court, but such appeal unless sooner waived, suspended the execution of the sentence until after the termination of the term of the county court to which the appeal was taken. If the appeal was entered, it vacated the conviction and sentence of the lower court. If not entered, the lower court could enforce the sentence after the appeal was waived or after the termination of the county court to which the appeal had been taken. The terms of the county court to which the appeals were taken, did not terminate until after December 1, 1894, when the repealing clause of the statute took effect; and when the petitioner ceased to be State's Attorney, and ceased to be complaining and prosecuting officer. None of the appeals were entered in county court. One was waived, but not until after December 1, 1894. After the

waiver, in the case in which the appeal was waived, and after the termination of the terms of the county court to which the appeals were taken, in the other cases, the court in which the prosecutions were commenced, and the convictions had, enforced the convictions and sentences; and the fines imposed came into the state treasury. In case the fine and costs were not seasonably paid, the sentence was, that the respondent should be confined at hard labor in the House of Correction for three times as many days as there were dollars in such fine and costs. Hence, on December 1, 1894, when the repealing statute took effect the convictions and sentences were not enforceable, were liable to be wholly vacated by entering the appeals and were of such a nature that if enforced, fines, as such in money, might not come into the state treasury. For these reasons, and because the convictions and the sentences became enforceable, and the fines were paid into the state treasury after the repealing statute took effect, the State Auditor refused to draw his order on the State Treasurer in favor of the petitioner for one-fourth of such fines. These fines were not recovered in the name of the petitioner either as a public prosecutor or a public suitor. They were recovered in the name of the state, and ordered to be paid to the State Treasurer. Such were either the expressed or implied terms of the sentence. If first paid to some intermediate agent of the state, their legal destination was the state treasury, and not until they reached the state treasury did the State Auditor have control over them. One-fourth of them was not a part of the salary or fees given to the petitioner, as State's Attorney. They came to him in that capacity, if at all, because, by virtue of his office, he was a complaining and prosecuting officer; one of many such officers under the law. It was given in the first instance, to the complainant, whether a private person, or a public officer, and wanting such complainant, to the prosecuting officer. By the terms of the

statute, such complainant, or prosecuting officer, was to receive nothing for his services, in that behalf, unless the prosecution resulted in a conviction and sentence, and payment of a fine or forfeiture. While given to encourage prosecutions of this class of offences, as held in *Wing* v. *Smilie*, 63 Vt. 532, it was not intended to encourage the institution of unfounded prosecutions, and so wisely withheld an inducement for the commencement of such prosecutions, unless reasonably sure to result in conviction and the payment of a fine or forfeiture into the treasury of the state.

Public policy, rather than payment for services rendered, was the inducement which led to the passage of the law. State's attorneys and all other public prosecuting officers were under a duty to institute and pursue prosecutions for all known offences of this kind, without this inducement. Having been enacted in the interest of the public, the law could be repealed whenever in the judgment of the law making power public good required its repeal, and no right would be violated except such as had become fixed under the law, while in existence. The contention is whether the petitioner had any fixed right to one-fourth of these fines.

I. The petitioner contends that the repealing clause of the act of 1894 should not be given a retrospective or retroactive effect because there is nothing in the repealing act which declares a legislative intention that it shall be given such effect. This is a well recognized and established rule, applicable to all repealing and other statute laws which would operate injuriously upon established, or vested rights. As announced in *Briggs* v. *Hubbard*, 19 Vt. 86, "Every law that takes away or impairs *rights vested* agreeably to existing laws, is retrospective." Or as is defined negatively in the elaborately considered case *Rich* v. *Flanders*, 39 N. H. 321.

"Acts of the legislature are not to be considered as retrospective, unless they impair rights that are vested, because most civil rights are derived from public laws ; and if, before rights become vested in particular individuals, the conven-

ience of the state produces amendments or repeal of these laws, those individuals have no cause to complain."

Or as defined in the same case, in the dissenting opinion of Bell, C. J.

"Every statute which takes away or impairs a vested right acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability in respect to transactions or considerations already past must be deemed retrospective in its operation."

But on December 1, 1894, the petitioner had no vested right to one-fourth of what afterwards became fines paid into the treasury of the state. He could not have maintained any action for this fourth, at that time. They had not then become fines. Whether they ever would, was subject to several contingencies. If the respondents entered their appeals in the county court, all which the petitioner had caused to be done in the lower court, in procuring conviction and sentence, would be vacated. They had indicated their purpose to enter the appeals by taking them. Then, the sentences were not absolutely for the payment of fines. It was at the election of the respondents to pay their respective fines, or to neglect to make such payment, and to submit to the alternative sentence at hard labor in the House of Correction. In the latter case the fine, as a money fine, would never exist or become enforceable. These contingencies prevented the petitioner's right to one-fourth of these fines from becoming vested. *United States* v. *Morris*, 10 Wheat. 246. In this case, in 1813, a vessel and goods to the value of twenty-two thousand three hundred and sixty-one dollars and seventy-five cents had been seized in the harbor of Portland for violating the non-intercourse act, then in existence, by the collector and surveyor of the port, who, under the law, were entitled to a moiety, realized from such seizures. The case had gone to a judgment of condemnation and forfeiture, and execution had been placed in the marshal's hands, commanding him to sell the property. At this juncture, a remission of the

forfeiture, under existing law, had been secured from the secretary of the treasury. The marshal refused to proceed under the execution. The suit was brought in the name of the United States for the benefit of the collector and surveyor, for one-half the value of the vessel and goods condemned and adjudged forfeited to the United States, against the marshal for having delivered the property to the owner, and for refusing to sell enough of it to pay the moiety. The case was argued by Wheaton and Webster for the surveyor and collector, and by Emmet and Oggen for the owner of the vessel and goods, and evidently carefully considered. It was held that the collector and surveyor had no vested right to the forfeiture and would have none until the money arising from the sale of the property condemned was paid to the collector of the port of Portland; that until then the right of the secretary of the treasury to remit the forfeiture attached, and that the collector and surveyor had only an inchoate conditional expectancy; that the United States would not become a trustee for the collector and surveyor until it had received the money by a duly authorized officer, and held it for distribution.

This case in several respects is analogous to the one at bar. It is authority for holding that the petitioner had no vested interest in these fines when the repealing law took effect; that then the state held no money in trust for the petitioner subject to the order of the defendant as State Auditor. The most that then existed was an inchoate conditional expectancy that these prosecutions might ultimately ripen, as they did, into fines received by the state. To the same effect is Cooley's Constitutional Limitations No. 359. Under the head of "Interests in Expectancy," he says:

"First, it would seem that a right cannot be considered a vested right, unless it is something more than such a mere expectation as may be based upon anticipated continuance of the present general laws; it must have become a title, legal or equitable, to the present or future enjoyment of property,

or the present or future enforcement of a demand, or a legal exemption from a demand made by another. Acts of the legislature, as has been well said by Justice Woodbury, cannot be regarded as opposed to fundamental axioms of legislation, unless they impair rights which are vested because most civil rights are derived from public laws, and if, before the rights become vested in particular individuals, the convenience of the state procures amendments or repeals of those laws, those individuals have no cause of complaint. The power that authorizes or proposes to give may always revoke before an interest is perfected in the donee."

He cites in support of these propositions *Weidenger* v. *Spuanee*, 101 Ill. 278; *Warren* v. *Atkinson*, 43 N. J. 571; *Merrill* v. *Sharburne*, 4 N. H. 199, 8 Am. Dec. 52; *Rich* v. *Flanders*, 39 N. H. 304; 1 Kent Com. 455. Hence giving the repealing statute effect December 1, 1894, when it became an operative law, and giving it no retrospective effect, in a legal sense, the petitioner had no vested right in these fines to be affected by the repealing statute. About twenty-five thousand gallons of Distilled Spirits, 1 Benedict U. S. Cir. Ct. 367. *Coshen* v. *Stonington*, 4 Conn. 209; 10 Am. Dec. 121 and note on retrospective law and vested rights.

II. The petitioner further contends that, inasmuch as he had done what eventually proved to be all that was necessary to procure the payment of these fines into the state treasury, his title to one-fourth of them rests upon a contract, or *quasi* contract, which the repeal of the law giving him this fourth could not abrogate, nor take away. This contention would be maintainable if the fines had become such, in the possession of the state, before the repealing statute took effect. The infirmity of the contention is that when the repealing statute took effect, these fines were neither in the possession of the state, nor was their character, as fines, determinatively and unconditionally adjudged and fixed. *As to rights and transactions past and closed*, under existing laws, the repeal of such laws has not the effect to disturb or discharge such rights. Such are the decisions upon which he relies, and

especially *Pacific Mail Steamship Co.* v. *Joliffe*, 2 Wall. 450. But these decisions cited in his brief show conclusively that salary, fees, or bounties offered or given by statutes are not contracts nor in the nature of contracts. In *Butler et al.* v. *Pennsylvania*, 10 How. 402, in which the question was whether, where persons had been appointed to an office for a specified term, at a per diem named, such per diem for the entire term was a contract which the law-making power could not change during the term, the court quote with approval from the opinion of Duncan, Justice, in *Com.* v. *Bacon*, 6 Sarg. & Rawle, 322, as a clear and compendious statement of the law.

"These services rendered by public officers do not in this particular partake of the nature of contracts, nor have they the remotest affinity thereto. As to stipulated allowance, that allowance, whether annual, *per diem*, or particular fees for particular services, depends on the will of the law maker, and this whether it be the legislature of the state, or a municipal body, empowered to make laws for the government or a corporation."

It was accordingly held both by the state and the United States court, that the legislature of the state of Pennsylvania could lawfully reduce the *per diem* of the official, who had been appointed under existing laws for a special term of office, during such term, from four dollars to three, *per diem*.

In *East Saginaw Salt Co.* v. *East Saginaw*, 13 Wall. 377, another case relied upon by the petitioner, under a statute, a bounty had been offered, to any person or corporation who would bore and find salt water in the state of Michigan, and manufacture a certain number of bushels of salt from such water. The bounty consisted of the payment of ten cents per bushel for the salt manufactured, and the exemption from taxation of all the property employed in such enterprise.

This law was subsequently repealed after the plaintiff had erected expensive works, and produced the required number of bushels of salt. It was strenuously contended by Mr. Matt

H. Carpenter, that the offer of exemption from taxation of the
works erected by the plaintiff while the offer was in existence,
was a contract which the repeal of the law under which the
offer was made, could not effect.  In reply to this contention,
affirming the decision of the Supreme Court of Michigan, the
United States Supreme Court, speaking through Justice
Bradley, says :

"Such a law is not a contract, except to bestow a promised
bounty upon those who earn it, so long as the law remains
unrepealed.   There is no pledge that it shall not be repealed
at any time.   As long as it remains a law every inhabitant of
the state, every corporation having the requisite power, is at
liberty to avail himself, or itself, of its advantages, at will,
by complying with its terms, and doing the things which it
promised to reward, but is also at liberty, at any time, to
abandon such a course.   There is no obligation on any per-
son to comply with the conditions of the law.   It is a matter
fully voluntary and as it is purely voluntary on the one part,
so it is purely voluntary on the other part, that is on the part
of the legislature to continue, or not to continue the law."

To the same effect is Cooley on Constitutional Limitations
No. 383.   He says :

"So, as before stated, a penalty given by statute may be
taken away by statute at any time before judgment is recov-
ered.   So an offered bounty may be recalled, except as to so
much as was earned while the offer was a continuing one, and
the fact that a party has purchased property, or incurred ex-
penses in preparation for earning the bounty cannot preclude
the recall."

Citing the last named case from the 13 Wallace, and as
found in 19 Mich. 259, or in 2 Am. R. 82.   Hence, on the
authorities relied upon by the petitioner, whether the offer of
a fourth of these fines collected, made, as held in *Wing* v.
*Smilie*, 63 Vt. 532, to encourage complainants and prosecuting
officers to put into execution statute laws against those who
commit the class of offences named, are considered as fees,
to pay for services rendered, or as a bounty, such offer, ex-
cept so far as fully complied with, was not a contract nor a

*quasi* contract, which precluded the legislative power, which made the offer from recalling it at its pleasure. The petitioner cannot legally complain of the repeal of the law, and the recall of the offer, although he had taken steps to comply with it, unless those steps had resulted in the payment of fines into the treasury of the state while the offer was in existence. He relies upon the statute making the offer. He must show a full acceptance of it while the statute making it existed. When the fines became such in the treasury of the state, subject to the control of the State Auditor, the law giving the petitioner one-fourth of them did not exist, and the petitioner cannot lawfully say that the offer created a contract or *quasi* contract or obligation, which the legislature could not withdraw, by repealing the law making the offer before the offer was fully accepted by him.

III. He further contends that under V. S., s. 29, the repeal of the law making this offer, did not affect his right to one-fourth of these fines; that his right to them was a "right accruing" within the meaning of this section of the statute. This section reads :

"The repeal of an act shall not revive one which has been repealed, nor affect an act done, a right accruing, accrued, acquired or established, nor a suit or proceeding had or commenced in a civil cause before the time when the repeal takes effect ; nor shall it affect a suit pending at the time of such repeal for the recovery of a penalty or forfeiture incurred under the act so repealed."

This section took its present form in the revision of the statutes of 1880. From the marginal note it would appear to be intended, in other language, to express what was included in the general statutes, Chap. 4, ss. 18 and 19 ; but from the report of the revisers it is a recast and amendment of these sections so as to conform to Chap. 130, ss. 3 and 4, of the general statutes as containing the later and clearer expression of the legislature, on the subject. Sections 18 and 19 are in substance, if not in the exact language, act 15 of 1851. This act

was passed doubtless to remedy the defect in the law shown by *Sumner* v. *Cummings*, 23 Vt. 427, and relates wholly to saving a suit predicated upon a statute, repealed pending the suit. This decision was made in the spring of 1851. The plaintiff was cast in the action, after having once obtained a verdict by the repeal of the statute without a saving clause on which the suit was brought. Sections 3 and 4 of chapter 130 of the general statutes relate to the effect of the repeal of statutes made by that revision and are somewhat broader, in scope and language, than sections 18 and 19. Eliminating that portion of sections 3 and 4 which relates to the repeal of a statute not reviving a statute before repealed, and to penalties and forfeitures and suits pending for their recovery, section 3 reads :

"Neither shall it (the repeal) affect any act done or any right accruing, accrued or established, or any proceedings, doings or acts ratified or confirmed, or any suit or proceeding had or commenced in any civil cause before the repeal takes effect, but the proceedings therein shall when necessary conform to the provisions of the general statutes."

From this came that portion of V. S., s. 29, reading "nor affect an act done, a right accruing, accrued, acquired, or established, nor a suit or proceeding had or commenced in a civil cause before the time when the repeal takes effect." It is the manifest purpose of sections 3 and 4 of chapter 130 of the general statutes to save all rights, then in being, which had arisen under existing laws from being affected by the revision so far as it should operate to repeal such laws. For this reason it declares that an act done under existing laws, shall not be disturbed by a repeal of those laws, nor shall a right, accrued or established, under existing laws be affected by their repeal. A right might be acquired by a misformed judgment rendered under such laws, or by a duty imposed by such law, and the failure to discharge that duty, which failure operated to the damage of some one, without his fault, as was held in *Harris* v. *Townshend*, 56 Vt. 716.

It may be difficult to specify in advance all the ways in which rights might have been acquired, or established, or have accrued under existing laws.   An acquired, or an accrued right might not have been established and need to be shown to exist by proper proof, as was allowed to be done in *Harris* v. *Townshend, supra*.   It would not be difficult to apply these general terms to the facts of cases as they arise.   It is more difficult to determine what is intended by a right accruing. Perhaps the only case decided under the law of 1851 before the enactment of ss. 3 and 4 of chapter 130 of general statutes may throw some light upon such intent.   That case is *Pratt* v. *Jones*, 25 Vt. 303.   It is an action of *scire facias* to obtain a new execution upon a justice judgment which had apparently been satisfied by the set off of real estate.   The real estate was covered by an unnoticed mortgage, for its full value, so that, in fact the original execution was unsatisfied.   At the time of the levy of the execution, there was no statute law by which its apparent satisfaction could be shown to be no satisfaction.   In 1850 such a statute was enacted and the plaintiff commenced his suit.   This statute conferred upon the plaintiff a right, in the form of a remedy, which did not before belong to him.   By bringing his suit, under it, this right began to accrue to him, but it would not become a right which had accrued to him until he obtained judgment under it.   Then act 15 of 1851 was passed.   In 1853 the act of 1850 was repealed before the plaintiff had obtained judgment, or before the right conferred by the act of 1850 had become an accrued, or acquired right. It was held that the act of 1851 saved, to the plaintiff, the right conferred by the act of 1850 of which he was availing himself, but had not fully availed himself. It was therefore a right given by the statute, which was accruing to the plaintiff when the statute, conferring the right, was repealed.   The same principle is involved and decided the same way in *Hine* v. *Pomeroy*, 39 Vt. 211. The right, in each case, which, under the act of 1851 was

held not to be taken away by the repeal of the statute con-
ferring it, was a remedial right.   It was a perfect right given
to the plaintiffs, by the statute, when they brought their
suits.   But before the plaintiffs had come into the enjoyment
of the benefits to be derived from its use the right was taken
away, unless saved by the act of 1851.   The right, but not
the benefits to be derived, was as perfect when they com-
menced their suits as when the suits should result in judg-
ment.   When the statutes conferring the right were repealed
the plaintiffs were in the exercise of a statutory right "accru-
ing."

The common law right of dower is also an example of a
right accruing.   The wife's right to a husband's lands at-
taches as soon as he acquires title and enters into possession,
although not an estate in the land while he is living ; he can-
not divest her of it by conveyance under covenants of war-
ranty.   It is a right which she can convey and must convey
even while the husband is living, to be divested of it,
although such conveyance operates only as an estoppel.
But she does not come into personal enjoyment of it unless
she survives her husband nor until then.   If it existed under
our law, it would be a right accruing to her during the life
of the husband.   Yet unless saved by the statute under con-
sideration, it can be taken away by statute, during the mari-
tal relations, after it had attached to the husband's real
estate, because it will not become an interest in such real
estate unless she survives him.

*Porter* v. *Noyes*, 2 Greenl. 221 ; 11 Am. Dec. 30 and
note ; *Combs* v. *Young's widow*, 4 Yerger 218, 26 Am. Dec.
225 and note ; *Strong* v. *Clem*, 12 Ind. 37, 74 Am. Dec.
200 and note ; *Weaver* v. *Gregg*, 6 Ohio S. 547, 67 Am.
Dec. 355 and note ; *Moore* v. *Mayor*, 8 N. Y. 110, 59 Am.
Dec. 473 and note.   These are instances of a right accruing
under law which would be saved by this section of the sta-
tute.   There may be many others conferred both by reme-
dial and non-remedial statutes.   But the repealed statute

must have conferred a right, for it is only a *right* whether accruing, accrued, acquired, or established, that is saved. Expectations and anticipations are not saved. The petitioner was given no right under this statute except to *fines* and *forfeitures* when they became such. When the proceedings instituted or prosecuted by him ripened into fines, he took a right to one-fourth of them and when they were paid into the state treasury the defendant had authority to draw an order in his favor for such fourth. His relation to these fines was not unlike that of a plaintiff to costs, wholly conferred by statute, and which do not attach until final judgment. Hence a variation or removal of them by statute pending a suit, disturbs no right of the recovering party. *Taylor* v. *Keeler*, 30 Conn. 324. As said in this case such change in the statute may disturb "well grounded anticipations" but no right, because such right does not attach until final judgment. *Supervisors of Onandaga* v. *Briggs*, 3 Denio 173. The statute gave the petitioner a right to one-fourth of fines. His right did not attach until the prosecutions resulted in *fines*. Like the right of the collector and surveyor of the port of Portland in *United States* v. *Morris, supra*, it attached only to the money collected as fines and ready to be distributed. When the prosecutions resulted in fines no law existed conferring one-fourth of them on the petitioner.

*Petition dismissed without costs.*