# WOODBURY GRANITE COMPANY

## v.

## MULLIKEN & GIBSON.

JANUARY TERM, 1894.

*Contract of sale.  Subsequent sale of same property.  Construction of writing for court.  Corporation chargeable with knowledge of directors.*

1.  If the plaintiff contracted for the sale of property to the defendants, and afterwards sold and delivered the same property to another person, it would be estopped from maintaining an action for the purchase price against the defendants.

2.  Where the terms of a letter are unambiguous and require no resort to extrinsic evidence for its meaning, the court should construe it and not submit its construction to the jury.

3.  So the court should have told the jury what authority was conferred upon the clerk and treasurer of the plaintiff in respect to the making of contracts by the letter heads under which the correspondence in reference to this contract was carried on by such clerk and treasurer.

4.  A corporation is chargeable with the knowledge of its directors, and if one director, having authority thereto, makes a contract, the corporation is not relieved from the effect of it by what some other director, without the knowledge of the one making the contract, may have previously done.

5.  *Held,* that the evidence of the plaintiff did not tend to establish a completed contract between the plaintiff and defendants previous to the written contract between the plaintiff and the Ryegate Granite Works.

30

General assumpsit.   Plea, the general issue.   Trial by
jury at the March term, 1892, Washington county, THOMP-
SON, J., presiding.   Verdict and judgment for the plaintiff.
The defendants except.

The plaintiff sought to recover the purchase price of cer-
tain granite alleged to have been sold to the defendants per-
sonally and delivered, at their request, to the Ryegate
Granite Works.

The plaintiff was the owner of a granite quarry situated
in Woodbury, and was engaged in the operation of this
quarry in the year 1888.   Its only stockholders were Chas.
A. Watson, who was president, one Voodry, who was vice-
president, and Alfred E. Watson, who was clerk and treas-
urer.   Voodry lived in Woodbury, near the quarry.   Chas.
A. Watson lived at Calais, some seven miles from the
quarry, and Alfred E. Watson resided at Hartford, where
the books and papers of the company were for the most part
kept.

The Ryegate Granite Works was a corporation doing
business at Ryegate.   One D. W. Learned was its presi-
dent, the defendant Gibson its treasurer, and the defendant
Mulliken one of its directors at the time covered by the tran-
sactions in question.

The Ryegate Granite Works had purchased previous to
November, 1888, from time to time, small quantities of
granite from the plaintiff, but never a very considerable
amount.   About that time the Ryegate company received
an order which required, to fill it, a very considerable quan-
tity of stock, and with a view to purchasing this stock from
the Woodbury Granite Company, the defendant Gibson went
to Woodbury some time in November.   At that time he
went to the plaintiff's quarry and there saw Voodry.   He
looked over the quarry, told him in a general way what the
order was, but did not have a detailed statement of it at that
time.   Still later, in November, he made another visit to

Hardwick and had another interview with Voodry in refer-
ence to this same matter.    At this time he had a bill of the
stock wanted and showed it to Voodry.    Voodry said that
the order would be a good one for them and that he thought
they could fill it, but that he would not agree to nor name
prices without further consultation with the Watsons; and
it was then arranged that at some future date a meeting
should take place between Mr. Voodry and one or both of
the Watsons, representing the Woodbury Granite Company,
and Mr. Gibson.

At this interview Voodry said to Gibson that he did not
regard the Ryegate Granite Works as good for the pay, and
that the Woodbury company would not furnish the granite
unless some suitable arrangement was made in this respect;
that if a good note could be given, which they could use at
the bank, that might answer, but that the note of the Rye-
gate Granite Works would not be accepted.    In answer to
this Gibson had said that he should be willing to sign a note
for the stock wanted, and thought that Mr. Learned and
Mr. Mulliken would do the same.

This interview was in the last days of November, and in
pursuance of the understanding then had, some time from
the 7th to the 10th of December, another interview was had
at the quarry in Woodbury.    Voodry and Chas. A. Watson
were both present at this interview upon the part of the
Woodbury company, and the defendants, Gibson and Mulli-
ken, with Learned, were also there.    The testimony of
Chas. A. Watson and Voodry, as to what took place upon
this occasion, was substantially the same.    Chas. A. Watson
testified that he did not think that he knew at that time ex-
actly what stock was required, and that he did not see a bill
of pieces until some two weeks afterwards, when it was
given him by Voodry; but that he had, from conversation
with Voodry, a general idea of what was wanted.    He said
nothing in his testimony as to prices; he testified that he

objected to furnishing this stock upon the credit of the Rye-gate Granite Works, and that Gibson and Learned said they would give their individual note in payment, and that Mulliken said he would give a note which would be good at any bank.

The testimony of Voodry as to what took place upon this occasion was as follows :

Q.  "Tell us all that was said there by Mr. Gibson and Mr. Mulliken and by you, if anything, in relation to this contract for this stone."

A.   "They looked the stone over and Mr. Learned did not say a great deal anyway, only said 'it was very nice looking stone,' nice patterns and nice stone; Mr. Mulliken thought it was nice stone, and a very fine chance to get out stone, a very nice arranged business to quarry stone; and they looked the business all over, and finally when we got around to the business about our trade they wanted to know about the prices of the stock, and I told them I could not give the prices of all the stone until I counseled with, had more talk with Charles and Alfred Watson about it; there was some large stone to quarry, larger than we had ever handled.   I did give them prices of smaller stone, and when we got to the matter of pay I told them I would not take the Ryegate Granite Works' note and Mr. Learned and Mr. Mulliken and Mr. Gibson said they would back a note that we could deposit in the bank and draw our money, and when the order was half filled our clerk was to go up there and they were to give a note to cover the amount they had received that we could deposit in the bank and draw our money on ; and we left it in that way as to payment."

Q.  "You say you told them you would not take the Ryegate Granite Works for paymaster?"

A.   "Yes, I told them so."

Q.  "What did they say in reply to that?"

A.   "They did not make any great reply, only said they would give their individual note, and the three men agreed to back it, too."

Q.  "Any question there made by them about solvency or insolvency of the Ryegate Granite Works?"

A.   "Nothing."

Q.  "Did you then know whether those men held any office in that company at Ryegate or not?"

A.  "I knew Mr. Gibson was the superintendent of that, I did not know what office the others held, and nothing about it."

Q.  "Anything said about when you should ship this stone?"

A.  "They wanted we should start that at once; just as quick as we could."

There was no testimony in the case other or different from that of Charles Watson and Voodry in reference to the sale to the defendant at this time, and the plaintiff did not claim that any contract of sale was made at any other time. Neither Charles A. Watson nor Voodry saw the defendant Mulliken after this date.   Voodry testified that some days afterwards he saw the defendant Gibson, and that Gibson then told him to hurry along the stock.

On December 20, 1888, Charles A. Watson sent to Alfred E. Watson a list of the stock wanted, together with a letter of that date in reference to the furnishing of this stock. That portion of the letter material to this case was as follows :

"WOODBURY, VT., Dec. 20, 1888.

*Dear Brother:*

I came up here this afternoon.   The Ryegate Granite Company have sent over a bill or a list of stone they want. They don't want to pay only 50 cents up to 40 feet, and prices above 40 feet they don't find any fault about; it is a good order, but I shouldn't think best to do any better than 50 cents up to 30 feet, and 65 cents above, up to 70 feet. The spires we couldn't put any price on until we know what we could get them drawn for.   Gibson said he would give $74 apiece for them at the quarry.   That is well enough. They want to know right off, so you write them what you will do right away.   Do what you think best; when we find out what we can get the spires drawn for we will let you know and you can let them know.   Do as you think best about getting the stone up to 30 feet for 50 cents or 50 cents up to 40 feet."

After receiving this letter Alfred E. Watson, under date of December 24, 1888, wrote to the Ryegate Granite Works and enclosed a proposition for contract for this same stock. This proposition was afterwards accepted by the Ryegate Granite Works, and the material part of it was as follows:

"December 24, 1888.

Please deliver to us on board cars at Hardwick, Vt., the following bill of stock (here follows a list of the stock wanted):

"All stone containing under 40 feet, 50 cents per cubic foot; pieces containing from 40 to 60 feet, 65 cents per foot; from 60 to 70 feet, 70 cents per foot; for pieces containing over 70 feet, 75 cents, except in case of spires 2-7x 2-7x24-5, which shall be $1.25 per cubic foot; also cap 7-6x5-0x3-0, which shall be $1.25 per cubic foot.

"This order is not subject to countermand in any respect except by mutual agreement, or as hereafter provided.

"All stone delivered prior to April 1, 1889, to be in proportionate sizes, and if any part of stone is not delivered by that time this order is subject to cancellation by the Ryegate Granite Works only for such balance.

"Settlement for all stone delivered shall be made by two months' note for half the amount, and three months' note for balance, interest reckoned on all bills of stock thirty days overdue.

RYEGATE GRANITE WORKS,
By D. W. LEARNED, Prest.

Accepted as above:
WOODBURY GRANITE CO.,
By ALFRED E. WATSON, Clerk and Treasurer."

The Ryegate Granite Works was not willing to accept the proposition exactly as stated in this contract, and made certain alterations, returning the contract to Alfred E. Watson for his approval as altered. Thereupon a long correspondence ensued in reference to the matter, and it did not clearly appear from this correspondence whether any definite conclusion was arrived at or not. The contract was executed by both parties as appears from the above copy, and the plaintiff proceeded to get out and deliver the stock from

time to time, but there seems never to have been a definite understanding in reference to certain matters embraced in the contract, and finally, on April 1, 1889, the Ryegate Granite Works notified Alfred E. Watson that they need not fill any of the order not already filled, and on April 19, 1889, sent to him a statement of account showing due from it to the Woodbury company for stock delivered under the contract, two thousand six hundred and eighty-eight dollars. In payment of this it remitted two notes, dated April 1, 1889, one for one thousand three hundred and forty-four dollars, payable two months from date, and another for a like amount payable three months from date. April 30, 1889, Mr. Watson acknowledged the receipt of the statement of account and these notes, saying that he had just returned home from an absence in the south and west; that he would go over their account shortly and advise them of the result.

About the middle of May, following, the Ryegate Granite Works went into insolvency. Early in June Alfred E. Watson saw his brother, Charles A. Watson, at Montpelier, and then learned from him for the first time that the sale had been made to the three individuals and not to the Ryegate Granite Works, and that the notes should have been given by them. Thereupon he immediately telegraphed to Gibson, Learned and Mulliken to meet him at Wells River. Mulliken and Learned did meet him there, and Mr. Watson then delivered back to Mr. Mulliken the notes, and insisted that he should look to them personally for payment of the same. At the same time, or about the same time, he wrote to Mr. Gibson stating that he had left the notes with Mulliken, and his reasons for so doing.

The plaintiffs claimed that there was a perfected sale of this stock to the defendants at the time of the conversation at the quarry, about December 10, and that the stock was furnished in pursuance of this contract by the request of the

defendants to the Ryegate Granite Works upon the sole credit of the defendants; that what was subsequently done by Alfred E. Watson was done in ignorance of the arrangement made at Woodbury, and was really the carrying out of that contract for the delivery of this stock to the Ryegate Granite Works. It was conceded that the stock was purchased for, and was to be delivered to, that company, the only question being whether it was sold to the defendants upon their credit or to the Ryegate Granite Works upon its credit.

The defendants claimed that the talk at Woodbury in the early part of December was merely a negotiation looking to the purchase of this stock, and that the contract subsequently made between Alfred E. Watson and the Ryegate Granite Works was the contract for this sale; that the sale was, therefore, to the Ryegate Granite Works, and that the defendants were not liable in respect of the payment of the purchase price.

At the close of the testimony the defendants moved the court to direct a verdict in their favor for that the testimony in the case did not tend to show any contract between the plaintiff and defendants, but only a contract between the plaintiff and the Ryegate Granite Works. The court overruled the motion, and the defendants excepted.

The defendants, among other things, requested the court to instruct the jury as follows:

"If the defendants made a binding contract upon themselves in December with respect to the pay for the granite delivered, and the Woodbury Granite Company subsequently made another contract by which the Ryegate Granite Works agreed to pay for the same granite by its notes, and the notes of the Ryegate Granite Works were given to the plaintiff in accordance with the terms of the last agreement, the plaintiff cannot recover."

The court declined to so instruct the jury, and did instruct them that if the original sale was made to the defend-

ants and the credit given to them the defendants would not be released by any subsequent contract made by the plaintiff with the Ryegate Granite Works concerning the same granite, unless it was mutually understood that such subsequent contract should release the defendants.

To the refusal of the court to charge as requested, and to the charge as given above, the defendants excepted.

The defendants claimed that the letter from Charles A. Watson to Alfred E. Watson, of December 20, gave Alfred authority to make the contract which he subsequently did make with the Ryegate Granite Works for the sale of this granite ; and further claimed that the letter heads upon the paper upon which the correspondence was conducted in reference to this contract between the plaintiff and the Ryegate Granite Works, held Alfred E. Watson out to the Ryegate Granite Works as having such authority.   The plaintiff denied that Alfred E. Watson had authority to make the contract, and he himself testified that he did not understand that he had.   Upon this branch of the case the court instructed the jury that they were to consider whether this letter gave Alfred E. such authority, and were also to consider how far the plaintiff, by the use of its letter heads, held Alfred E. out to the world as having such authority.

To the submission of the effect of these written instruments to the jury the defendants excepted.

The statements upon the letter heads bearing upon this point are as follows :

" All general correspondence with the company should be addressed to the clerk and treasurer.   Alfred E. Watson, clerk and treasurer, P. O. Hartford, Vt."

*Dunnett & Nelson* and *Smith & Sloan* for the defendants.

The fair import of the plaintiff's testimony is that the defendants agreed to guarantee the notes of the Ryegate Gran-

ite Works.   Their promise, therefore, falls within the statute of frauds and could not be established without a written memorandum.   Brown, Frauds, s.  197, 197 a;  *Swift* v. *Pierce et al.*, 13  Allen  136;  7 Waite's Act. and Def., 7; *Petit* v. *Braden*, 55 Ind. 202 ;  *Bloom* v. *McGrath*, 58 Miss. 249.

When  a  new  contract  for  the  sale  of  this same granite to the Ryegate  Granite  Works was made it discharged the original  contract.    *Browning* v.  *Stallars*, 5  Taunt. 450; *Bergen* v.  *Williams*, 138 Mass. 544;  *Lamoille  Valley  Rd. Co.* v. *Marsh*, 49 Vt. 37.

The court should have instructed the jury that the letter of Charles A. Watson gave Alfred E. Watson authority to make the  contract with  the Ryegate Granite Works, and it was  error  to submit the  construction of that writing to the jury.    *Rem.  Ins.  Co.*  v.  *Crane*,  134  Mass.  58;  Big., Fraud, pp. 141, 142 and *passim* ;  Story, Agency, ss. 74, 82 ; Thomp., Tr., s. 1065 and note ;  *Goddard* v. *Foster*, 17 Wall. 140 ;  *Wasson* v. *Rowe*, 16 Vt. 525.

*Hunton & Stickney* and *J. P. Lamson* for the plaintiff.

The  sale was  originally made to the  defendants and the credit  given them,  and they are liable, although the goods were delivered by their order to the Ryegate Granite Works. 1 Benj., Sales, p. 131, s. 112, n. 2.

The court  properly submitted to the jury the letter along with the oral evidence in the case, upon the question of what authority Alfred  E.  Watson had.    *Harper* v. *Kean*, 11 Serg. & R., 280 ;  *Watson* v. *Blaine*, 12 Id. 131 ;  *Overton* v. *Tracy*, 14 Id. 311 ;  *Edelman* v. *Yeakel*, 27 Penn. St. 26 ; *Beatty* v. *Lycoming Ins.  Co.*, 52 Id. 456 ;  *Hughes* v. *Westmoreland  Coal Co.*, 104 Id. 207.

When the true meaning of  a  written instrument can only be determined  by reference  to extrinsic facts, the construc-

tion is for the jury.  *School Dist.* v. *Lynch*, 33 Conn. 330; *Symmes* v. *Brown*, 13 Ind. 318; *Ganson* v. *Madigan*, 15 Wis. 144; *Bedard* v. *Bonville*, 57 Id. 270; *Etting* v. *Bank of U. S.*, 11 Wheat. 59; *Gibbs* v. *Gilead Ecc. Soc.*, 38 Conn. 153; *Philibert* v. *Burch*, 4 Mo. Ap. 470; *First Nat. Bank* v. *Dana*, 79 N. Y. 108; *Wheeler* v. *Schroeder*, 4 R. I. 383; *Taylor* v. *McNutt*, 58 Tex. 71; *Macbreath* v. *Haldiman*, 1 T. R. 182; Forsyth's Trial by Jury, 2d Am. Ed., 236, 237; Eng. Ed., 284.

TYLER, J.   It appeared that on December 10th, 1888, Charles A. Watson, Lewis W. Voodry and Alfred E. Watson were the only stockholders in the plaintiff company; that they constituted its board of directors; that Charles A. was president, Lewis W. vice-president and superintendent and Alfred E. clerk and treasurer.

The plaintiff claimed and its evidence tended to show that it sold the granite described in its specification on December 10, 1888, to the defendants individually by oral agreement, and by their directions delivered it to the Ryegate Granite Works.

The defendants claimed and their evidence tended to show that the sale and delivery were to the Ryegate Granite Works, a company of which defendant Mulliken was a director and defendant Gibson was superintendent; that negotiations for a purchase were begun at Woodbury, December 10, 1888, with the plaintiff, by D. W. Learned as president and the defendants as directors of the Ryegate Granite Works; that the negotiations were carried on by correspondence between the latter company and A. E. Watson as the plaintiff's clerk and treasurer, acting in its behalf; that the terms of the contract were reduced to writing by Mulliken, and that a formal contract in duplicate was executed by the proper officers of both companies as of December 24, 1888, (Exhibits 3 and 4) and that the plaintiff subsequently ac-

cepted the notes of the Ryegate Granite Works in payment.

It was a material question whether the granite was sold and delivered under a verbal contract made December 10, 1888, by and between the plaintiff and the defendants, as the plaintiff's evidence tended to show, or whether the interview at Woodbury was a mere negotiation which resulted in the making of the written contract of date December 24.

The plaintiff's evidence tended to show that said negotiations took place, and said letters of the plaintiff by its clerk and agent, Alfred E. Watson, were written by him in ignorance of the existence of the contract declared upon. The defendants claimed, and their testimony tended to prove, that said negotiations and correspondence occurred with full knowledge on the part of said Alfred E. Watson of all that happened at Woodbury, when and where the plaintiff claimed a contract of sale to the defendants individually was made.

The plaintiff's evidence tended to show that Charles A. undertook to and supposed he did inform Alfred E. of the making of the alleged oral contract, but that the latter did not understand that a contract was claimed to have been made by his two associate directors in December.

The defendants 9th request was as follows :

"If the defendants made a binding contract upon themselves in December with respect to the pay for the granite delivered, and the Woodbury Granite Co. subsequently made another contract by which the Ryegate Granite Works agreed to pay for the same granite by its notes, and the notes of the Ryegate Granite Works were given to the plaintiff in accordance with the terms of the last agreement, the plaintiff cannot recover."

We think this request contained a sound proposition of law. The court in its charge seems to have proceeded upon the ground that a subsequent sale of the same granite to the Ryegate Granite Works would not have vacated the sale to the defendants, if such sale was made, unless there was an

agreement between the parties that the defendants should be released. But if the plaintiff sold the granite to the defendants, as it claims, and subsequently sold the same stock to the Ryegate Granite Company, it was then beyond its power to perform its contract with the defendants, and it would be estopped from claiming the sale and delivery to the defendants. There was error in not substantially complying with this request.

There was no ambiguity in the terms of the letter of Dec. 20, 1888, from Charles A. to Alfred E. Watson, and there was no occasion to resort to extrinsic evidence to aid in its construction. By its terms it conferred authority upon Alfred E. to make the contract. It should have been so construed by the court and not have been submitted to the jury for construction.

We also think there was error in submitting to the jury the question whether the letter heads gave Alfred E. real or apparent authority to contract in behalf of the plaintiff. The authority was in writing. There was no controversy as to the terms of the authority. The court should have construed the heading upon the letters as matter of law. We think it clear that they conferred upon Alfred E. apparent if not actual authority to make the contract.

The court in its charge seemed to regard Alfred E. as one party to the contract and Charles A. and Voodry as other parties. In fact the plaintiff was one of the parties to be bound by the contract, and it was chargeable with all the knowledge that was possessed by any one of its three directors and agents. Therefore it was error for the court to hold that the plaintiff would not be bound by what Alfred E. did provided he acted through mistake or ignorance as to what his associate directors had done in making the contract. The plaintiff labored under no misapprehension as to the facts, for it was chargeable with all the knowledge that Charles A. and Voodry, its directors and agents, possessed.

It appeared by the plaintiff's evidence that when the parties met at Woodbury and looked over the granite they had before them a bill of the stock which the defendants wanted. The plaintiff claims that the pieces of granite were then and there agreed upon, and that the prices were settled. The testimony, which is referred to, does not show a completed contract. The sizes and prices seem to have been settled by subsequent correspondence between Alfred E. Watson on the one part and the Ryegate Granite Works on the other.

It is true that the parties might have agreed to leave these matters open for future adjustment, or the defendants might have taken the stock for what it was reasonably worth, leaving the prices to be adjusted, but such was not the case disclosed by the evidence referred to. We find no perfected contract until the one which the defendants claim is evidenced by exhibits three and four. Previous to that time, upon the plaintiff's own evidence, there were only negotiations and correspondence, which, the defendants claim, resulted in the written contract.

*Judgment reversed and cause remanded.*

Rowell, J., being engaged in county court, did not sit.