BLAISDELL AND BARRON, ADMINISTRATORS, *v.* GEO. H. DAVIS.

May Term, 1898.

Present : ROSS, C. J., TAFT, TYLER, MUNSON, START and THOMPSON, JJ.

Opinion filed May 24, 1900.

*General issue with notice—Notice in the nature of a plea—Notice not a specifica-tion—V. S. 1149, 1150—*Notice of special matter of defence, filed with the general issue, is not a specification under the general issue, but is in the nature of additional pleading, and a defendant filing such notice may avail himself, under the general issue, of any evidence tending to show that a cause of action never existed.

*Departure in argument from position during trial—Discretion of the trial court—Deprivation of legal right must be shown—*That the defendant's counsel in his opening statement and during the introduction of evidence, in accordance with notice filed with the general issue, based the defence upon a certain contract, which, if proved, showed that the cause of action asserted by the plaintiff never existed, did not make it error to permit such counsel in argument to change his ground as to the date and form of the contract, but not as to its essence, the change being necessitated by the turn the evidence finally took, and there being nothing in the record to indicate that the plaintiff's preparation and management of the case were different from what they would have been had he known at the outset that the defence was to be placed on the ground finally taken.

*Evidence—Probability of disputed fact—*It being claimed that a material part of a letter introduced in evidence was not in the letter when sent, the testimony of a witness that he saw the letter within an hour after it was received, and that it then contained the part in question is ad-missible.

*Hand-writing—Qualification of witness to hand-writing—*A person who has become familiar with the hand-writing of another by reading his undis-puted letters may give evidence tending to show the genuineness of a letter in question claimed to be written by him.

*Evidence in rebuttal—Order of evidence under rulings not excepted to—*When, under rulings of the court not excepted to, the order of evidence is established, the question of what is proper evidence in rebuttal will be determined with reference to the order so established in the particular case.

*Evidence of declarations—Circumstances and conversation giving force and cer-tainty to declaration—*In showing a material declaration made by the

plaintiffs' decedent, the defendant was entitled to show enough of the circumstances in which it was made and the conversation of which it was a part to give force and certainty to the declaration.

*Documentary evidence—Admissions as ground of receiving book—*An account that is not an original book is proper evidence in connection with proof tending to show an admission of its correctness.

*Admission—Scope of admission as to correctness of book—*When the defendant's account book shows an application by way of payment of a claim which without such application the defendant could avail himself of only under a plea of offset, evidence tending to show an admission of the correctness of the account tends to show the propriety of such application.

*Evidence as to the financial worth of one deceased—*On the question of the amount and value of the property of a deceased person at a particular time in his life, the testimony of a witness who had been intimately associated with him in business for a period of many years, covering the time in question, as to his knowledge of the property of the deceased at such time, and his opinion of his financial worth based on such knowledge was competent.

*Inventory as evidence against administrators—*When the question of the financial worth of a deceased person is material in a case to which his administrators are a party, the inventory of his estate filed by such administrators shortly after his death is admissible in connection with evidence tending to show the amount of his indebtedness.

*Presumption when record is silent—*Such inventory having been received in evidence, it will be presumed that there was evidence in respect to the indebtedness of the deceased, if the contrary does not appear by the record.

*Evidence—Character as to remoteness determined by other evidence—*When the question is as to the financial worth of a deceased person five years before his death, evidence of the amount of his estate at the time of his decease is not too remote, when received in connection with evidence relating directly to his worth at the time in question.

*Jones* v. *Ellis,* 68 Vt. 544 distinguished.

*Evidence of disconnected facts—*Evidence that a father, in deeding a house to a daughter at a particular time, took back a life lease of it, has no tendency to show whether a transfer of property to the husband of the daughter about two years before was a gift, loan or payment.

*Declarations—Natural import of conversation—Collateral facts—*A deed by the decedent to a daughter, of a house, with a reservation of a life lease, might naturally be spoken of by him as a gift, and testimony as to the precise transaction would not properly rebut the testimony of a witness

who had recited a conversation in which the decedent spoke of the $6000 in question as a gift and also of the collateral matter of the deed to his daughter as a gift.

*Argument to the jury*—In denying that he had stated during the trial that a trade in question was made while the defendant was living in the west, counsel for the defendant said in argument: "I knew otherwise ; I knew that this trade was not concluded until after Davis [the defendant] returned to Vermont." This remark was not regarded as a statement by counsel of a material fact as within his own knowledge, but as an expression of his understanding as an attorney of what the case was to be, given as a reason why he could not have made the statement attributed to him.

*Proper inferences of fact from non-production of book*—Under a bare concession that the defendant had received from the plaintiffs' decedent a sum of money sued for, it behooved the plaintiffs if they had any evidence that their decedent expected the money to be repaid to produce it, and their failure to produce any book on which the money, conceded to have been delivered, was charged, was a circumstance tending to show that the delivery of the money did not create a debt and was proper for the consideration of the jury, and so for comment in the argument of counsel and the charge of the court.

*Argument*—The failure of the plaintiffs to produce a book on which the items making up their claim were charged being legitimate matter for comment, they could not have been harmed by an argument based on the less damaging fact that as administrators they had not included the claim sued on in their inventory, and hence the propriety of an argument based on the inventory is not considered.

*Inferences as to letter not produced*—The fact that counsel for the defendant in producing certain letters declared that they were all his client had received from the writer, did not make it error to permit the jury to find, from evidence subsequently introduced, that the defendant had received another letter from the writer, and on that fact, if found, in connection with the other evidence, to base such inferences as the testimony warranted.

*Inferences of fact from language of letter as to writer's knowledge*—The question of what facts may be inferred to have been within the knowledge of the writer of a letter, in view of the language of the letter taken in connection with all the other evidence, is for the jury. Such question is not one of construction.

*Granite Company* v. *Mulliken,* 66 Vt. 465 distinguished.

*Argument to be confined to evidence—Suggestion of facts not in evidence*—The defendant and his wife being disqualified from testifying, the de-

fendant's counsel in argument called the attention of the jury to this fact, and then went on to say that there were a great many things which his client knew and which his client's wife knew and which counsel knew that they could not show. This assertion was regarded as manifestly improper and as, without doubt, prejudicial.

*Non-production of incompetent evidence—Making evidence*—By passing to the other side, with an expression of consent to their use, inadmissible letters which the other side does not use, counsel do not acquire the right to comment in argument upon the failure of the other side to introduce the letters in evidence.

*Argument—Reference to files in the case not connected with the trial*—It is error for counsel, in argument to the jury, to state matters shown by affidavits, for continuance, filed in the cause but not pertaining to the trial, and not brought before the jury in connection therewith.

GENERAL ASSUMPSIT with specifications for money loaned and for rent. Pleas, the general issue with notice, and payment. Trial by jury, Orleans County, September Term, 1897, *Rowell,* J., presiding. The court directed a verdict for the plaintiffs for $204.07, with interest thereon, the sum named being conceded by the defendant to be due and unpaid as rent, and submitted to the jury the right of the plaintiffs to recover in excess of that amount. Verdict for the plaintiffs to recover $204.07 with interest. Judgment on verdict. The plaintiffs excepted.

The action was brought by B. M. R. Nelson in his life time, and after his death was prosecuted by W. H. Blaisdell and E. W. Barron as special administrators of his estate. The plaintiffs sought to recover as rent a larger sum than $204.07, and also claimed to recover $6000, on the ground that the decedent had loaned that amount to the defendant.

It appeared that the defendant's wife and Sam Nelson were the only children of the decedent.

The defendant called one Enoch Rowell as a witness who testified that in the summer of 1894 the decedent told him that he had given the defendant $6000, and had given the defendant's wife what he called $4000. He testified that these statements were made in the course of a conversation with reference to

trouble between the decedent and the wife of his son Sam and some part of the conversation, connected with the statement as to the gift to the defendant, but not directly concerning it, was testified to by the witness.

The defendant also called Sam Nelson as a witness and his testimony tended to show that the decedent had told him that he had given the defendant $6000. As tending to show how the decedent came to say this, he was allowed to testify to other parts of the conversation which showed that the matter came up in connection with a contemplated gift to the witness of a like amount, and that the gift of $6000, to the defendant, was referred to by the decedent as a reason for the contemplated gift to the witness.

The evidence consisted largely of letters, the number and nature of which are set out in the opinion. To the argument of the defendant's counsel as to the inferences proper to be drawn from the letter of December 18th, the plaintiff assigned his objections, which were only that it was not in line with the defence pleaded, that the plaintiff had had no notice of the claim made in argument and that there was no evidence supporting it.

To the instruction of the court in regard to the inferences which the jury might draw from that letter the plaintiff also assigned his objections, which were only that it was for the court and not for the jury to say what the letter indicated and that there was no evidence tending to show that any letter was written modifying the offer contained in the letter of December 12.

*John Young* and *W. W. Miles* for the plaintiffs.

*F. W. Baldwin* and *Bates, May & Simonds* for the defendant.

MUNSON, J. The plaintiffs, special administrators of the estate of B. M. R. Nelson, sought to recover six thousand dollars claimed to have been loaned defendant by the deceased. The exceptions state that the defendant admitted the receipt of the money as charged, and made no claim that he had repaid it, and

pleaded only the general issue with notice. This notice was in substance that on the first day of October, 1890, the defendant was the husband of Nelson's only daughter, and was living and engaged in business at West Superior, Wisconsin; and that Nelson, in consideration that the defendant would at once sell out his business and return to Barton, Vermont, to live, agreed to give him for so doing the sum of six thousand dollars; and that in accordance with such contract and agreement the defendant did at once thereafter sell out his business at a great sacrifice, and return to Barton to live; and that Nelson paid the defendant for selling out his business the sum of six thousand dollars, it being the same money mentioned in the first eight items of the plaintiffs' specifications.

In making an opening statement to the jury, defendant's counsel said he expected it would turn out in evidence that there was a great deal of correspondence between Nelson and the defendant with reference to the defendant's returning to Vermont, and that on account of the final agreement and contract that was made between them the defendant did return to Vermont and remain there. At the conclusion of this statement, defendant's counsel conceded the receipt of the six thousand dollars, and said, " we claim that Nelson paid it to Davis on this contract."

The plaintiffs also claimed to recover an item of rent, and the defendant conceded his liability for any balance of it remaining unpaid, and the plaintiffs thereupon rested their case. Defendant's counsel then said that there was unquestionably a *prima facie* case for the plaintiffs as far as the rent was concerned, but that they would like a ruling as to whether the plaintiffs had made out a *prima facie* case for the six thousand dollars, and the court then ruled that the defendant's concession as to the six thousand dollars made a *prima facie* case for the plaintiffs upon that part of their claim, and the defendant, without excepting to this ruling, proceeded with his evidence.

The exceptions state that the only evidence tending to show any contract or arrangement between Nelson and the defendant for the defendant's return to Barton, made before such return, was a correspondence covering nine letters from Nelson to the defendant or his wife, introduced by the defendant, and eleven letters from the defendant or his wife to Nelson, introduced by the plaintiffs. It may be gathered from these letters that the defendant and his wife had left Barton for a trip to the West not long before the commencement of the correspondence, and that there had been some talk before their departure about the defendant's going into business in Barton with financial assistance from Nelson; that Nelson did not anticipate that the defendant would establish himself elsewhere without further discussion of this plan, but that the defendant was disappointed at not receiving some definite statement from Nelson before leaving, and went with an inclination to locate in the West if circumstances were favorable; that before the matter was decided defendant's wife wrote Nelson with a view to ascertaining his intentions, and received a response which the defendant regarded as discouraging; that the defendant finally bought an interest in his brother's business at West Superior, without further communication with Nelson, and that Nelson was greatly disturbed when he learned what had been done.

The earlier correspondence relating to the trouble can be sufficiently characterized by a general statement. The letters of Nelson express throughout a great desire to have the defendant sell out and return as soon as possible, and a willingness to make good his loss in doing so and assist him after his return. The defendant at first urges the necessity of their remaining, but afterwards expresses a willingness to return if Nelson advises it after considering the matters submitted. It is evident, however, that this was followed by the making and withdrawal of further objections in letters not produced; for Nelson afterwards speaks of his disappointment in finding that what he had written was

deemed insufficient, and later, of his pleasure at the prospect of their speedy return.

In the letter last referred to, Nelson remarked that he did not want the defendant to do anything to injure himself financially, and asked defendant to write him what he should expect him to do for him when he got back. In reply to this the defendant wrote that he should at least expect him to fix up the store as had been talked, and let him have it rent free, and furnish him not to exceed eight thousand dollars without interest, to be paid back as fast as it could be without injury to the business; Nelson to have what goods he took at cost and freight. To this Nelson replied, under date of December twelfth, that if the defendant would come back he would fix up the store to suit him, and let him have the use of the store and eight thousand dollars in money without rent or interest until the rent and interest should amount to one thousand dollars, and pay the regular price for what he had from the store; and the letter contains the further statement that if this was not satisfactory he would give defendant six thousand dollars and let him have it along as needed. Defendant's letter of December eighteenth, written partly by himself and partly by his wife, does not acknowledge the receipt of the above communication, but would seem from its contents to have been written in reply to it. In this letter the defendant speaks of the difference between his wife's having money and his having it in his own right, and further on says he can see Nelson's offer in no other light than that he will give him the equivalent of one thousand dollars and put him under a debt drawing interest after eighteen months; and his wife says it is only giving him one thousand dollars, and that if they stayed there they would not need to borrow money and pay interest.

In offering the letter of December twelfth, defendant's counsel spoke of it as "conclusive of the case." The plaintiffs objected to its admission on the ground that the alternative proposition to give the defendant six thousand dollars was not

written therein by Nelson.  No letter written by Nelson later than December twelfth was produced, but a letter from the defendant's wife speaks of one dated the 27th.  The exceptions show that the plaintiffs notified the defendant to produce all letters received by the defendant or his wife from Nelson after December 12, 1890, and that defendant's counsel replied, " These letters, exhibits one to eleven, are all the letters that the defendant or his wife received from Mr. Nelson after that date that we can find or know anything about, or ever knew anything about."  The plaintiffs introduced a letter, dated January 4th, 1891, in which the defendant wrote Nelson that after discussing the matter further they had come to a final decision that they could never understand things or make them understood by writing, and that they were going to Vermont about the 27th, with the intention of staying if satisfactory arrangements could be made.

Defendant's counsel suggested in argument, in explanation of defendant's letter of December eighteenth, that the offer of six thousand dollars contained in the letter of December twelfth might have been modified by a subsequent letter from Nelson stating it to be an advancement to the wife, or that the offer as made might have been understood by the defendant and his wife to have been so intended.  But, upon being inquired of by the court, counsel stated that they did not stand upon the ground of an advancement to the defendant's wife, and did not claim that when defendant returned to Vermont there was any agreement between him and Nelson as to what Nelson should give him for coming back, but did claim that it fairly appeared from the circumstances of the case, in connection with the testimony as to Nelson's statements, that an arrangement was made after the defendant's return, by which Nelson let defendant have six thousand dollars in such a way that it did not create a debt from him to Nelson.  The charge of the court permitted a verdict for the defendant upon the ground stated.

It is clear that the notice filed with the general issue, and the opening statement made by counsel, placed the defendant's claim upon an agreement made before the defendant left West Superior, and operating as the consideration for his return ; and the position taken by counsel during the introduction of evidence, as before indicated, was in harmony with that theory; and the exceptions disclose nothing previous to the argument that would notify plaintiff's counsel of any other claim.   It is evident that the production of defendant's letter of January fourth forced the defence to change its ground as to the date and form of the contract.   The defendant was not precluded from doing this by the notice filed, for a notice is treated as a pleading and not as a specification.   Any evidence tending to show that there was never a cause of action could be made available under the general issue.  *Gregory* v. *Tomlinson,* 68 Vt. 410 ; *Limerick Bank* v. *Adams,* 70 Vt. 132. Nor were defendant's counsel precluded from this course by their previous treatment of the case.   It cannot be said that the plaintiffs were necessarily harmed by the change.   The essence of the claim as originally stated remained the same.   It is true that a contract spoken of as the consideration of defendant's return became by this change a contract made after his return and the consideration for his remaining ; but this was immaterial, for the return was nothing except as it involved a remaining.   The change was important only in its relation to the matter of evidence.   The conduct of the trial in this respect was within the discretion of the court, and there can be no advantage of exception unless it is made to appear that the course taken deprived the plaintiffs of some legal right.   If the plaintiffs' preparation and trial of the case were such as fully met the position finally taken, they had no ground of complaint.   There is nothing in the case from which we can say that they were harmed in this respect.   It does not even appear that they claimed in the court below that their preparation or management of the case would have been different if they had known the defence was to be placed on the ground finally taken.

The claim of plaintiffs that there was no evidence tending to show that any contract was made after the defendant returned to Barton cannot be sustained.   The correspondence indicated that the defendant returned in consequence of certain negotiations, to remain if satisfactory arrangements could be concluded.   He did remain, and there was evidence of statements by Nelson that he had given him six thousand dollars.

The plaintiffs claimed that the six thousand dollars alternative offer was not in the letter of December twelfth when sent, and their claim was supported by the fact that no mention was made of that offer in defendant's letter of December eighteenth. To meet the unfavorable inference arising from this fact, it was permissible to show by one who saw the letter within an hour after it was received, that it then contained the clause in question.

Nor was it error to elicit from this witness that he had been shown the previous correspondence and had read enough of it to become familiar with the handwriting of the letter in question, and that about that time he read a letter in that handwriting in which the writer promised to pay the defendant six thousand dollars if he would come back.   The answer in this form was doubtless some evidence tending to show that the disputed clause was in Nelson's handwriting, and as such it was afterwards made the basis of an objection to evidence offered to rebut the plaintiffs' case upon that point.   But this evidence was not introduced under any holding that the defendant must offer proof of the handwriting of that clause to entitle the letter to admission, and we do not think its introduction entitled the plaintiffs to have the defendant's evidence of genuineness put in at that time. The defendant offered the letter in putting in his case, and the plaintiffs stated their claim by way of objection, but upon being told that the right to contest the genuineness of that clause would be open to them, the letter came in without objection.   The plaintiffs did contest its genuineness in putting in their reply to the

defendant's case, and the defendant was then permitted to rebut by introducing expert evidence that the clause was in Nelson's handwriting. The order of evidence under the rulings of the court, not excepted to, was such as clearly made this evidence proper in rebuttal.

The exceptions taken to the testimony of Rowell and Sam Nelson as to the fact of trouble between Nelson and Sam's wife, and what Nelson said about it, are not sustained. The defendant was clearly entitled to show enough of the circumstances and conversation to give force and certainty to Nelson's declaration. None of the testimony that came in under exception exceeded this limit.

One Hartwell, a clerk in the defendant's store, testified that the defendant kept an account with Nelson, and that at a time when this account showed certain items of rent credited Nelson on the goods he had had, with a balance struck showing a small amount his due, Nelson looked the account over and said it was probably all right. The account was thereupon received in evidence in connection with the testimony of the witness, as tending to show part payment of the rent sued for. This was not error. The admissibility of the book did not depend upon its being a book of original entries, but upon Nelson's recognition of it as a correct account. The book was relied upon only as the basis of an admission. Nor was it made inadmissible by the fact that there was no plea in offset. The evidence had a tendency to show that Nelson recognized the application of the rent in payment of his store account as proper, and treated the balance shown as the amount his due.

The court held that if Nelson could well afford to do what it was claimed he did do, it would be some evidence tending to show that he did it, and received evidence that he was worth about fifty thousand dollars. The plaintiffs excepted to the evidence as irrelevant, and now insist that no presumption that a man has agreed to pay money can arise from the fact that he has ample means to make the payment. The argument hardly reaches

the ground of admissibility.   Many facts that have no independent tendency to establish an issue become admissible after other evidence has been adduced.   This fact was offered as bearing upon the probability of a very unusual agreement as to the making of which direct evidence had been introduced.   The essence of the defendant's claim was that Nelson had given six thousand dollars for the pleasure of having his daughter live near him.   We think the possession of ample means would have a legitimate bearing upon the question whether such a contract had been made.

The evidence offered in proof of this fact was also objected to on the ground that it was incompetent.   The witness had been associated with Nelson in business for many years, and he was permitted to state what he knew of Nelson's property, and give an opinion of his worth based upon that knowledge.   We think evidence of this character is admissible.   It is, like most evidence, subject to the infirmity of uncertainty, but it would evidently be impracticable in the case of unsettled estates to prove the fact in any other way.

The defendant was also permitted to introduce, as tending to show what Nelson was worth at the time in question, the inventory of his estate filed in the Probate Court by the plaintiffs as special administrators.   It is argued that this was incompetent without evidence tending to show the amount of the indebtedness.   For aught that appears in the exceptions there may have been such evidence.   It is also claimed on the authority of *Jones* v. *Ellis*, 68 Vt. 544, that the evidence was too remote in point of time.   But the testimony of the witness last referred to evidently furnished the connection that was considered necessary in the case cited.

The plaintiffs offered to show that Nelson, on deeding a house to his daughter in November, 1892, took back a life lease of it,— as tending to show that Nelson was not giving away his estate, and to rebut Rowell's testimony that Nelson told him he had given the house to his daughter.   This was properly excluded.

It is difficult to imagine how this transaction, two years after the one in question, could have any bearing upon the probability of the defendant's claim. Nor did it fairly tend to rebut Rowell's testimony. The testimony was not a statement of the fact itself, but of what Nelson said about it; and the transaction was one which Nelson might naturally and properly speak of as a gift.

Several points are made under exceptions taken to the argument. In denying that he had stated, early in the trial, that there was an offer of six thousand dollars which was accepted, and on the strength of which the defendant had returned to Vermont, Mr. Prouty remarked, "I never said it, * * * I knew otherwise. I knew that this trade was not concluded until after Davis returned to Vermont." Plaintiffs' counsel treat what follows the denial as a statement by counsel of a material fact as within his own knowledge. We do not so regard it. It was apparently urged as a reason why he could not have made the statement claimed, and we think it may properly be treated as a reference to his understanding as an attorney of what their case was to be.

But, in another part of his argument, after referring to the fact that the law closed the mouth of the defendant and of his wife, Mr. Prouty went on to say that there were a great many things about the case which the defendant knew, and which his wife knew, and which counsel knew, which they could not show. This positive assertion of the existence of facts which could not be shown because of the disqualification was manifestly improper and doubtless prejudicial.

Nor was the advocate justified in referring to and commenting on the fact that the plaintiffs had not offered three inadmissible letters written by Mrs. Nelson, which defendant's counsel had passed to the other side with an expression of their desire to have them in the case. The failure of a party to produce competent evidence in his possession is proper matter of comment, but a party cannot make evidence for himself by placing inadmissible documents in the possession of the other party with

a waiver of objection, and commenting on his failure to use them.

Any conduct of a party and his counsel in the trial of a cause which has a legitimate bearing upon the good faith of his claim, so far as it has appeared before the jury, is proper matter of comment. But matters shown by the files, not pertaining to that trial and not brought before the jury in connection with it, cannot be made use of in argument. It was error for counsel to state to the jury what had appeared in affidavits for a continuance at a previous term.

Mr. Prouty argued the non-existence of any written evidence of indebtedness from the fact that the claim was not included in the inventory returned by the special administrators. It is not necessary to inquire just what could properly be inferred from this fact. The conduct of the trial on the part of the plaintiffs afforded so much better ground for the argument that the plaintiffs cannot have been harmed by its being first put on the ground stated.

No book was produced on which Nelson had made any charge of the items making up the six thousand dollars. The court in its charge recognized the validity of the argument made by defendant's counsel that the absence of any charge of these items was a circumstance tending to show that the payment did not create a debt; and to this the plaintiffs excepted. The plaintiffs claimed and now contend that the defendant's concession that he received the six thousand dollars as charged in the specifications relieved the plaintiffs from producing any written evidence upon that branch of the case, so that the omission to produce a book had no tendency to show that charges were not made. But the concession touched only the delivery of the money, and the question was whether it was to be repaid, and if the plaintiffs had any evidence which tended to show that Nelson so expected, it behooved them to produce it, and their failure to do so was a proper matter for the consideration of the jury.

The court instructed the jury that if the defendant's letter of December 18th fairly indicated to their minds that it was

probable that Nelson had written a letter subsequent to his letter of December 12th modifying the offer therein submitted, they would have a right to act upon what was so indicated. The plaintiffs claim that this was error because defendant's counsel, upon being previously notified to produce all letters of Mr. Nelson written after December 12th, replied that they had produced all they could find, or knew anything about, or had ever known anything about. It is obvious that this emphatic denial had no effect upon the conduct of the plaintiffs' case, and it was not error to proceed upon the assumption that there might have been such a letter notwithstanding the statement. In fact, the answering correspondence refers to one of later date that was not produced.

Counsel also claim that it was for the court to construe the letter and say what it fairly indicated, and cite us to the rule deduced from *Granite Company* v. *Mulliken*, 66 Vt. 465, that when the terms of a letter are unambiguous,and require no resort to extrinsic evidence to aid in their construction, the court should construe them. But the cases are not the same. That was a letter conferring authority to make a contract, and the court held that its terms were not ambiguous. Here, it was not claimed that the letters introduced constituted a contract. The question was not one of construction, but of inference. The matters which were within the knowledge of the writer at the time of writing were to be inferred from a consideration of the indefinite terms of his letter in connection with what had been previously written, and the inference drawn was to be considered in connection with the other evidence in determining the main question.

*Judgment reversed and cause remanded.*