### State v. Harry Rosenberg.

#### February Term, 1914.

Present: Powers, C. J., Munson, Watson, Haselton and Taylor, JJ.

Opinion filed October 14, 1914.

*Criminal Law—Perjury—Evidence—Best and Secondary—Person's Usual Practice—Offers of Testimony—Materiality of Testimony—Taking Case From Jury—Exclusion of Witnesses—Violation of Rule—Effect—Information—Sufficiency—Tested by Motion For Directed Verdict—Argument of Counsel.*

P. S. 1374, making transcripts of proceedings duly certified by the official stenographer's competent evidence, is an enabling statute, and does not affect the force of other evidence of the same facts, nor render incompetent any evidence that would otherwise be competent; and so in a prosecution of respondent for perjury in falsely testifying that he had not violated an order excluding witnesses from the courtroom the making, of that order was properly shown by the testimony of the official stenographer, reading from his stenographic notes.

Grounds of objection that are not briefed by the exceptor will not be considered on review.

Since P. S. 1373 requires stenographic reporters to furnish a certified transcript of the evidence and proceedings to any one in interest upon request, where, on a prosecution for false swearing respecting the violation of an order excluding witnesses from the courtroom, the stenographic reporter read his shorthand notes respecting the making of the order, it was not error to allow him further to testify that respondent had not requested him to transcribe the notes, where the only use made of that testimony was to meet the repeated assertion of respondent's counsel that they had no means of knowing what the reporter's notes would show.

On the trial of a witness for swearing falsely on his *voir dire* examination, had upon objection to his competency, where there was a dispute as to whether the oath administered was an oath in chief or only in respect of the *voir dire* examination; and it appeared that the stenographer's minutes showed that the objection to the wit-

ness's competency was interposed after the oath was administered, while there was evidence for the State that the objection was made before the oath was administered, the stenographer was properly allowed to testify that it was not his practice to record informal objections made before the witness was sworn, it being the stenographer's duty to make a *verbatim* report, as this testimony tended to preclude the inference that his notes were a *verbatim* report.

An exception to the exclusion of offered evidence reserves no question, where the offer does not disclose the evidence sought to be introduced.

An exception to a designated part of the charge will not be considered on review, where the exceptor fails to point out wherein that charge is faulty.

On the trial of a witness for swearing falsely on his *voir dire* examination, his motion for a directed verdict, on the ground that the oath administered was in chief and not in respect of the *voir dire* examination, was properly overruled, where there was some evidence for the State that the oath administered related directly to the preliminary examination.

While perjury can be committed only by false swearing in respect of a matter material to the issue, such issue need not be the main issue or question in the case, but it is sufficient if the false swearing be material to a collateral inquiry in the course of the proceedings.

The trial court has the right to exclude the testimony of a witness who has wilfully, and with the connivance of the party calling him, disobeyed an order excluding witnesses from the courtroom.

A mere link in a material chain of evidence, though that link alone would be worthless, is so far material as to be the subject-matter of perjury, regardless of whether there is evidence tending to establish the other links.

The sufficiency of an information cannot be challenged by respondent's motion for a directed verdict.

On the trial of a witness for falsely swearing that he had not violated an order excluding witnesses from the courtroom, questions asked him and other witnesses as to whether respondent gave any reason why he did not go to the courtroom, or why he did not know how the trial was progressing, were properly excluded, because there was no offer to show what the reason given was, and

the mere fact that he gave such a reason would not have corrob-
orated his testimony that he stayed away from the courtroom.

Where an objection to the argument of the State's attorney did not
suggest that respondent did not testify as argued, it will be as-
sumed on review that he did so testify.

On the trial of a witness for falsely swearing that he had not violated
an order excluding witnesses.from the courtroom, where he testi-
fied that he had minutes showing his whereabouts at the time it
was claimed he was in the courtroom, it was proper for the State's
attorney to refer in his argument to respondent's failure to pro-
duce such minutes.

INFORMATION for perjury. Plea, not guilty. Trial by jury
at the March Term, 1913, Chittenden County, *Waterman,* J.,
presiding. Verdict, guilty; and judgment thereon. The re-
spondent excepted. The opinion states the case.

*V. A. Bullard* for the respondent.

It is well settled that where a witness is examined on *voire
dire* before his examination in chief is begun, a special oath
must be administered. *Seeley* v. *Engell,* 13 N. Y. 545, reversing
17 Barb. 530; *Jacobs* v. *Laydon,* 11 M. & W. 685; *Dowdney* v.
*Palmer,* 4 M. & W. 664; *Turner* v. *Pearte,* 1 T. R. 717. The
issue in such a case is for the court and not for the jury. *Wright*
v. *So. Ex. Co.,* 80 Fed. 85; *Tucker* v. *Welsh,* 17 Mass. 160, 9
Am. Dec. 137.

*Theodore E. Hopkins,* State's Attorney, and *Henry B.
Shaw* for the State.

TAYLOR, J. The respondent was convicted of the crime of
perjury at the March Term, 1913, of Chittenden County Court.
The perjury alleged related to testimony given by him in the
trial of one Louis Alpert who was prosecuted at a special term
of said court in January, 1913, for the crime of receiving stolen
goods. In the Alpert trial the witnesses, both for the State and
the respondent, were ordered to be excluded from the court-
room. Rosenberg was called as a witness by Alpert, whereupon
the State objected to his testifying on the ground that he had
been in the courtroom during the taking of a part of the testi-

mony for the State in violation of the exclusion order. Before testifying the usual witness oath was administered to him by the clerk. The court immediately proceeded to hear the testimony of Rosenberg and other witnesses bearing upon the questions raised by the objection. A part of the examination was in the presence of the jury and a part after the jury were excused for the day. In the course of this examination the respondent gave the testimony relied upon as a basis of the charge of perjury, which was to the effect that he had not been in the courtroom after receiving notice of the order until called to the stand to testify. The record does not disclose the result of this inquiry further than it appears from the transcript, which is referred to and made controlling, that Rosenberg was later permitted to testify.

John H. Mimms was the official stenographic reporter at the trial of *State* v. *Alpert.* At the time of the trial of the instant case the transcript of the Alpert trial was not completed. Col. Mimms was improved as a witness and, against the objection of the respondent, was permitted to read from his shorthand minutes concerning the order excluding witnesses. The ground of the objection relied upon was that the certified transcript of the proceedings in the Alpert trial was the best evidence by virtue of P. S. 1374 making such transcript evidence in any action, civil or criminal, if relevant thereto. The statute giving evidentiary value to the transcript does not affect the force of other evidence of the fact, nor render that incompetent which, in the absence of the statute, would be competent. See 2 Wig. on Ev. §1186 and cases cited. It is an enabling rather than a restricting statute. The order of the court excluding the witnesses in the Alpert trial was material and could properly be shown by the reporter, whose duty it was to take it down. It was held in *State* v. *Camley,* 67 Vt. 322, 31 Atl. 840, that it was not error to permit the reporter to read material testimony from his minutes; but the objection in this case did not go so far as to raise that question. The other grounds of objection are not briefed and so are not considered. The exception cannot be sustained.

Against the objection that it was immaterial, the State was permitted to show by the same witness that respondent's counsel had not requested him to transcribe his stenographic notes relating to the objection to the respondent's competency as a witness in the Alpert case. The statute requires the reporter to fur-

nish a certified transcript of the proceedings to any party in interest. P. S. 1373. It is apparent from an examination of the record that the court permitted this inquiry because of the repeated assertion by respondent's counsel that they had no means of knowing what the reporter's notes would show. If immaterial, we think the testimony was too colorless to be prejudicial. It was argued that it was the duty of the State to produce the evidence against the respondent; that the fact that respondent's counsel could have obtained transcript did not relieve the State from the obligation to produce the evidence upon which they relied, and that the testimony was prejudicial because the inference to be drawn by the jury was that respondent should not claim that it should be produced by the State. The argument proceeds upon the theory that the transcript is the best evidence and that the State was seeking to excuse itself from offering the transcript because the respondent had an equal opportunity to procure it. So far as appears, the only use made of the testimony was to meet the assertion that respondent had no means of knowing what the stenographic notes contained. Reversible error does not appear.

In the cross-examination of Col. Mimms, the fact was developed that his minutes showed that when the respondent was first called to the stand in the Alpert trial the oath was administered. That immediately thereafter the objection to his competency as a witness was interposed, following which the alleged perjured testimony was given. The respondent claimed that the oath taken related to his testimony in the Alpert case and not to the inquiry as to his having violated the order of exclusion. Certain of the State's evidence tended to show that when the respondent was called the State's attorney raised the objection that some discussion followed; and that, pending the objection the court directed the oath to be administered. Later Col. Mimms was recalled and asked concerning his practice in making a record of objections that are made at a trial and what takes place in regard to a witness before he is sworn. Against the place in regard to a witness before he is sworn, witness answered: "I do not make a record of any informal objections before the witness is sworn." In the circumstances the evidence was material. Unexplained, the reporter's notes contradicted the other testimony. Their weight as evidence of the sequence of events leading up to the giving of the testimony in question

would be affected by the practice of the reporter in omitting to record informal objections, which may have been made at the bench. The cases cited by the respondent support the proposition that the fact that a person has the habit of doing a particular thing at a particular time has no tendency to prove that he did not do some other thing at the time in question, which is quite unlike the question presented here. The reporter is employed to make a *verbatim* report of the proceedings. The respondent was relying upon the reporter's minutes to support his claim that he was sworn as a witness before the objection as to his competency was made. If unexplained, the reporter's minutes of the proceedings would be entitled to great weight in determining the disputed question. In the light of the answer excepted to, they lost much of their force. In view of the practice shown, it was less probable that the stenographic notes were a *verbatim* report of the proceedings. See *Hine* v. *Pomeroy et al.*, 39 Vt. 211, 219; *State* v. *Shaw*, 58 N. H. 73; 1 Wig. on Ev. §§92-3 and notes.

The respondent contends that he has been wrongfully convicted because the oath administered to him did not relate to the examination as to his competency as a witness, and relies upon exceptions numbered in the bill, three, eighteen and twenty-one as raising this question. The third exception relates to the exclusion of an offer to show what was said by the court in the Alpert case ''for the purpose of showing that the court itself, as a court, took the matter into consideration and that it was a hearing before the court and not for the jury, to meet the claim of the State's attorney that * * * the oath administered was administered for the purpose of this examination; and also for the purpose of showing what was determined by the court itself at the time of considering the question whether or not Rosenberg was in the courtroom.'' The offer does not disclose the statement by the court sought to be introduced. Standing as it does the record presents no question for review. The necessity for an offer in such circumstances is too well understood to require the citation of authorities. The twenty-first exception relates to a portion of the charge of the court in which the crime of perjury is defined. Respondent's counsel have not attempted to point out wherein the charge in that regard was not correctly given. The question briefed was not raised by the exception.

The eighteenth exception is to the refusal of the court to direct a verdict for the respondent. Ten grounds of the motion for a directed verdict were specified. In his brief the respondent refers to the second and third grounds which were: 2. The evidence does not tend to establish the elements of the crime of perjury with which the respondent is charged. 3. From the undisputed evidence and conceded facts it appears that the respondent was not under a legal or judicial oath at the time of giving the alleged false testimony. The question briefed is treated as raised under the latter ground of the motion. As to the former there is no claim now made that any other element of the crime, aside from the oath, was lacking in the evidence. The oath administered to the respondent was, in form, the usual witness oath. The State's evidence tended to show that it was administered after the objection was interposed and with reference to the matter then before the court; while the respondent's evidence tended to show that it was administered when he was first called to the stand and before the objection was made. The respondent's argument is based upon the assumption that the oath was ''an oath in chief'' and it is urged that it had no application to his examination upon the *voir dire*. We have no occasion to decide whether an oath administered to the witness generally is sufficient to afford the basis of the charge of perjury in matters relating to his competency as a witness; for assuming that the respondent's contention in that regard is sound, there was evidence to support the claim that the oath related directly to the examination on *voir dire*. The respondent does not criticise the form of the oath as not being appropriate to the preliminary inquiry and we see no reason to question its form. There being evidence tending to show that the oath related directly to the preliminary inquiry, the motion was properly overruled even upon the respondent's theory of the law.

A further ground of the respondent's motion for a directed verdict was that there was no evidence tending to show that the alleged false testimony of the respondent was material to any issues raised or determined in the case of *State* v. *Alpert*. The respondent did not brief the exception to the overruling of his motion on that ground but in the closing argument his counsel claimed the benefit of the exception and argued the question orally. Counsel for the State did not brief the question but made

no objection to its being argued. We consider the exception without passing upon the effect of the failure to brief it.

The rule that the matter sworn to must be material to the issue or question in controversy in order that perjury may be assigned upon it is elementary. While it is necessary that the false swearing be material, it need not be material to the main issue or question; but it is sufficient if it is material to a collateral inquiry in the course of the proceedings. 2 Bishop's Crim. Law, §1032; 2 Wharton's Crim. Law, §1277; Clark's Crim. Law, 334; *State* v. *Keenan,* 8 Rich. Law (S. C.) 456; *State* v. *Shupe,* 16 Ia. 36, 85 Am. Dec. 485 and cases cited in note.

Chief Justice Holt in *Rex* v. *Griepe,* Holt, 535, says: "It is perjury to swear falsely in any circumstances which conduceth to the issue, or to the discovery of the truth, though if it be only in some impertinent or minute circumstance." No question is made but that perjury can be predicated upon false swearing on the *voir dire.* The inquiry in which the alleged false testimony was given was certainly pertinent to the case on trial. The right of the respondent in that case to improve Rosenberg as a witness was challenged by the objection. The court, as an incident of the trial, was called upon to determine that question.

There is considerable diversity of opinion as to the right of the court to exclude the testimony of a witness who has disobeyed its order for separate examination. It was said in *Holder* v. *United States,* 150 U. S. 91, 17 L. ed. 1010, 14 Sup. Ct. 10, that a witness who disobeys an order of withdrawal cannot be excluded from testifying on that ground merely, although the right to exclude under particular circumstances may be supported as within the sound discretion of the trial court. It is held in some states that where a party and his counsel are without fault that witness disobeys such order, the party shall not be deprived of the right of having the witness testify, but that the conduct of the witness may go to the jury upon the question of his credibility. *Davis* v. *Byrd,* 94 Ind. 525; *Taylor* v. *State,* 130 Ind. 66, 29 N. E. 415; *Loughlin* v. *State,* 18 Ohio 99, 51 Am. Dec. 444; *People* v. *Viskniskki,* 255 Ill. 384, 99 N. E. 621; 12 Cyc. 548 and cases cited.

It is probable that a majority of the cases hold that whether such a witness shall be examined or not rests in the discretion of the court. Wigmore states the rule to be that if the order of

exclusion is knowingly disobeyed the court unquestionably has
the power to refuse to admit the disobedient person to testify.
He says: "In the United States the great majority of courts
hold in general that the court may, in its discretion, disqualify
the witness; some of these courts, however, making the proviso
that the party must have connived. The other courts seem to
forbid in general terms the disqualifying of a witness though
in some of them it can hardly be doubted that a proviso as to
the party's connivance would be enforced. On the whole, the
courts occupy a common ground where there has been fault in
the party; at one extreme stand a few courts denying dis-
qualification even in that case; at the other extreme stand prob-
ably the majority of the courts, permitting disqualification even
without the party's fault." 3 Wig. on Ev. §842. For a dis-
cussion of the question and a review of the authorities, see
article on Sequestration of Witnesses by John H. Wigmore in
14 Harv. Law Rev. 475, 492. Other text writers on evidence
reach practically the same conclusion. Greenleaf on Ev. 567;
Phillips on Ev. 722 (Cohen & Hills notes, 501); 1 Starkie on
Ev. *163. Chamberlayne in his work on Modern Law of Evi-
dence says: "How the court will exercise its power of ex-
cluding an offending witness depends largely on the relation
which the party himself sustains to the act of his witness. If
the disobedience is not only wilful on the part of the witness,
but is aided or abetted by a party or his counsel, the right and
propriety of refusing to hear the evidence of the witness is
undoubted." After discussing the propriety of excluding the
evidence when the party is without fault, he concludes: "It
is therefore the practice, i. e., a customary exercise of judicial
administration, to receive the testimony of the offending wit-
ness in the absence of facts from which the inference of con-
nivance by the party or his counsel in the misconduct of the
witness can reasonably be drawn." 1 Cham. on Mod. Law of
Ev. §197.

Thus it is seen that the right of the court to exclude the
testimony of a disobeying witness would be undoubted if the
disobedience was wilful and aided or abetted by the party or
his counsel. For additional authority, see *Com.* v. *Crowley,* 168
Mass. 121, 46 N. E. 415, and cases there cited; *Johnson* v. *State,*
(Ala. App.) 62 So. 450; *Kilgore* v. *State,* (Okl. Cr. App.) 137
Pac. 364; 1 Bishop Cr. Pro. §1191; Whar. Cr. Ev. §446.

It is not necessary to decide whether the court could have rejected Rosenberg's testimony on a mere showing that he had disobeyed the order of exclusion. It is only necessary to consider whether his alleged false testimony was material to the question before the court, viz.: the right of the respondent Alpert to improve him as a witness. Respondent's counsel argue that as Alpert could not have been deprived of the respondent's testimony, if not implicated in his disobedience of the order, the material point of the inquiry was Alpert's, or his counsel's connection with the violation of the order. Assuming that the power of the court went no further than the respondent contends, it does not follow that the testimony relied upon was not material to the inquiry. In that event the inquiry would embrace at least three essential facts: (1) disobedience of the order, (2) knowledge of its existence, (3) the relation of Alpert and his counsel to the matter. The respondent testified as to two of these facts. He admitted that he was aware of the order, but, as the jury found, testified falsely that he had not disobeyed it. The respondent's testimony related to one link in the chain of circumstances that would affect his qualifications as a witness. It does not matter that some other fact is wanting to work his disqualification, so far as the materiality of his testimony to the inquiry is concerned. A link in a chain of evidence, even of no effect alone yet helpful in combination with other evidence, is so far material as to be the subject of perjury. 2 Bish. Cr. Law, §1032; *State* v. *Dayton,* 23 N. J. Law 49, 53 Am. Dec. 270; *Com.* v. *Pollard,* 12 Met. 225; *Wood* v. *People,* 59 N. Y. 117. The court did not err in overruling the respondent's motion on this ground. The respondent attempted by his false oath to mislead the court in its decision relative to a matter judicially before it. To say that he should escape the consequences of false swearing because, forsooth, the weight of evidence on the other essential element was against the State, rendering his false oath unnecessary, is inconsistent with law as well as with good morals and common sense.

An additional ground of the motion for a directed verdict was that the complaint does not show that the court has jurisdiction of the cause or matter under consideration at the time the alleged false testimony was given. The question of the sufficiency of the information could not be raised on a motion for a verdict. Having joined issue by his plea of not guilty

on the allegations of fact in the information and the State having introduced evidence supporting these allegations, it would be entitled to go to the jury on the facts. The issue raised by the plea was as to the truth of the facts alleged and not their sufficiency in law. Other means would have to be taken to raise that question. *State* v. *Louanis,* 79 Vt. 463, 65 Atl. 532, 9 Ann. Cas. 194; *Brattleboro* v. *Wait,* 46 Vt. 689; *Barney* v. *Bliss,* 2 Aik. 60. It was not error to overrule the motion as to this ground.

The respondent having testified that he was not in the courtroom during the examination of witnesses in the Alpert case, his counsel asked: Q. "During these two or three days did you give people the reason why you did not come to the courthouse?" The testimony was excluded and an exception allowed. The offer was to show only the fact that he gave a reason. The argument is that this evidence tended to characterize the actions and intentions of the respondent during the period of time referred to and to corroborate his testimony that he had kept out of the courtroom. The mere fact that he gave a reason for not attending court would have no such tendency as is claimed for it. It was not error to exclude the question.

The respondent called deputy sheriff Lord and, after showing by him that he saw the respondent at the foot of the stairs in the courthouse and that he made an inquiry of the witness, asked: Q. "What was that inquiry about?" The question was excluded under exception. The evidence was offered to characterize the respondent's act and where he was going, but there was no offer showing what the inquiry was. That the exception is unavailing as error is not made to appear.

One Charles Bishop called by the respondent testified that he saw the respondent nearly every day during the progress of the Alpert case, usually at his store, and that the respondent had told him that he did not know how the case was progressing. He was then asked: Q. "State whether or not he gave you a reason, when you asked him about how the trial was going on, that he did not know?" To the exclusion of the question the respondent reserved an exception. Here, as before, the offer was to show the fact that a reason was assigned and not the reason, "to make it more probable that he was there." The mere fact that he gave a reason why he did not know how the

trial was progressing would have no tendency to show that he was at his store on the occasion testified to by the witness and the exclusion of the question was not error.

In the closing argument the State's Attorney said, referring to the respondent: "He said he had minutes he could tell us of his whereabouts. Why didn't he produce them?" Upon respondent's counsel objecting to argument, "of the absence of any evidence, absent at the trial of this case and not called for," the State's Attorney continued: "I say if Mr. Rosenberg had had any such evidence as that it was of the highest importance of his defence that he produce it and show the character of it and prove to you that he had such minutes from which to refresh his recollection and make his testimony more certain." To this argument the court allowed an exception. The objection does not suggest that the respondent had not testified as argued, so we spend no time in examining his testimony. Assuming, as the objection does, that the tendency of the respondent's testimony was correctly stated, the argument was legitimate. The respondent had attempted in his testimony to account for his whereabouts during the time it was claimed he was in court. If he had "minutes" that would corroborate his oral testimony which he had not produced, it was proper to call the jury's attention to that fact in arguing his testimony. *Blaisdell et al.* v. *Davis,* 72 Vt. 295, 308, 48 Atl. 14.

*Judgment that there is no error in the proceedings and that the respondent take nothing by his exceptions. Let execution be done.*